James N. KITCHENS, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–256.

United States Court of Veterans Appeals.

Argued Nov. 30, 1994.

Decided Jan. 19, 1995.

Ronald J. Marzullo, St. Petersburg, FL, for appellant.

David W. Engel, Deputy Asst. Gen. Counsel, with whom Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, and Ralph G. Davis, Washington, DC, were on the brief, for appellee.

Before KRAMER, MANKIN, and HOLDAWAY, Judges.

MANKIN, Judge, filed the opinion of the Court, in which HOLDAWAY, Judge, joined. KRAMER, Judge, filed a concurring opinion.

MANKIN, Judge:

The appellant, James N. Kitchens, appeals the December 14, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which denied restoration of a 100 percent rating for grand mal seizure disorder. The Secretary filed a brief, and the appellant filed a brief and a reply brief. Telephonic oral argument was held on November 30, 1994. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). The appellant seeks reversal of the BVA decision and reinstatement of his previous 100 percent disability rating. The Secretary urges affirmance of the BVA decision denying restoration of the previous rating. The Court will reverse the Board's decision and remand the matter for reinstatement of the 100 percent rating.

## I. FACTUAL BACKGROUND

The appellant, James N. Kitchens, served on active duty in the United States Navy from June 30, 1960, to April 30, 1961. His entrance medical exam is negative for any abnormality or medical problem other than obesity. On an undetermined date in December 1960, while on the cruiser U.S.S. Dewey, the appellant was discovered unconscious. The service medical records of the appellant's indicate that he was found "blue and slobbering in his rack." The appellant could not recall this event when he was seen in sick bay. He was transferred to the destroyer U.S.S. Sierra where he was seen by the medical officer aboard. The medical officer's clinical impression was noted as "seizure? hypoglycemic[?]."

On February 24, 1961, the appellant was transferred to the U.S. Navy Hospital in Portsmouth, Virginia, where he was diagnosed with epilepsy, grand mal. Two electroencephalograms (EEGs) were performed that revealed a "generalized borderline abnormal record." An April 3, 1961, report from a VA medical board interpreted the continuity of the abnormal EEGs as consistent with a grand mal disorder rather than an isolated seizure. On May 1, 1961, the appellant was transferred to the Temporary Disability Retired List and granted service connection for epilepsy, grand mal, effective upon his release from active duty service. A March 20, 1962, rating decision assigned a 10 percent rating to the appellant's disability and granted an effective date of May 1, 1961. On October 6, 1981, the VA regional office (RO) issued a rating decision that confirmed and continued the 10 percent rating which had become statutorily protected. See 38 U.S.C. § 110; 38 C.F.R. § 3.951(b) (1993).

In July and August 1982, the RO received two statements related to the appellant's claim. The first statement was from an acquaintance of the appellant who had witnessed the appellant having a seizure. The second statement was from the appellant's wife who stated that the appellant's seizure activity had increased in frequency and se-

verity. On August 1, 1982, the appellant was admitted to a VA hospital for reevaluation of pain in the lower extremities. The admission notes for this period of hospitalization said the appellant complained of multiple types of seizures that were inadequately controlled. On October 22, 1982, the RO issued a rating decision granting the appellant a temporary 100 percent disability rating based on this period of hospitalization.

On October 11, 1983, the appellant and his wife testified before a rating panel concerning the issues of entitlement to: (1) an increased disability rating for a seizure disorder; and (2) service connection for a back condition. The appellant received a 40 percent rating for his epilepsy in a November 4, 1983, rating decision, effective September 1, 1982. The rating increase for the seizure disorder was based on the testimony given before the rating panel and on hospital records.

The appellant was hospitalized on November 14, 1984, after having a seizure with a prolonged period of unresponsiveness. When admitted, the appellant reported a history of grand mal seizures since 1961 and a recent frequency of one to four seizures per month. In June and July 1985, two lay statements concerning the nature and frequency of the appellant's seizures were submitted to the RO. On July 3, 1985, a rating decision granted the appellant a 100 percent rating for epilepsy, grand mal. The rating increase was based on the evidence of record, including the two lay statements from the appellant's wife and a friend.

On August 28, 1989, the RO sent the appellant a letter informing him that an examination was being scheduled to determine the current level of his disability. The RO sent a follow-up letter on August 29, 1989, requesting the appellant to furnish additional information on his seizure disorder. In response to the RO's request for information the appellant submitted several lay statements discussing the nature and severity of his disorder. On September 7, 1989, a VA special neurological examination was given to the appellant. The examination reported the diagnosis of, inter alia, epilepsy, grand mal.

On October 16, 1989, the RO received an anonymous telephonic report stating that the appellant was manufacturing symptomatology and second-party evidence to support his claim for total disability. Based on the anonymous report, the VA section chief recommended a special examination for the appellant. On November 14, 1989, the appellant was admitted to a VA hospital for three days of observation and evaluation. On the third day, the appellant was placed under observation with a continuously running EEG and video monitor. The appellant refused to allow the examiner to induce a seizure because of his heart condition. During the hospital stay the appellant experienced no seizures and was discharged with a diagnosis of, inter alia, "tonic clonic seizure disorder secondary to blunt head trauma." In the addendum to the November 21, 1989, discharge summary, under the heading of "O and E summary" a physician noted:

> [T]he records would clearly suggest that the patient is greatly exaggerating the frequency of his seizures. There would seem to be support for the idea of pseudoseizures as well. Certainly the initial event would appear to have been pseudo in my judgment. If this is the case the severity of the seizures would be only related to accident or what the patient is willing to undergo in terms of trauma. However, there is no hard evidence to support either of these ideas and therefore the *diagnosis* [*is*] *unchanged.*

Underlining in original document; second emphasis added.

On January 4, 1990, the VA reduced the appellant's rating based on the November 14, 1989, evaluation and the November 21, 1989, discharge summary. The rating was reduced from 100 percent to 10 percent effective April 1, 1990. The RO received the appellant's Notice of Disagreement on January 29, 1990. The appellant subsequently requested a hearing, and the RO informed the appellant that because he had requested a hearing his disability payments would be restored to the amount prior to the reduction.

On June 14, 1990, the appellant appeared at a RO hearing accompanied by his wife and

lay witnesses. At the hearing, the appellant testified that he had seizures between one and two times a month with a brief period of increase during the previous summer due to the aggravating effects of the hot weather. The appellant indicated that his doctor had informed him that hot temperatures may cause an increase in seizure activity. The appellant also testified that his seizures had decreased since he began refrigerating his medications and had his house air conditioned.

Three lay witnesses testified at the hearing that they had witnessed the appellant's seizures. At the hearing, the appellant also submitted a statement from a private physician who said:

> After reviewing the patient's history and his past medical records, I do not see any reason to doubt the veracity of this patient's seizures. I do believe that he has a real seizure disorder. It is a well known fact that in many seizure patients the EEG's never show seizure focus[,] especially in deep temporal lesions. I have conducted an EEG with Topographic Brain Mapping Electroencephalograph activity in the left temporal lobe with a delayed P–300 response which is also compatible with decreased left temporal lobe function. This is well explained after the chronic history of seizures which are probably coming from the left temporal lobe.

On June 27, 1990, the RO hearing officer issued a decision denying the appellant's claim for permanent restoration of the previously assigned 100 percent disability rating. The reduction was effective as of April 1, 1990. The appellant filed a VA Form 1–9, Appeal to the BVA, on September 26, 1990. On December 6, 1990, the RO issued a confirmed rating decision continuing the appellant's reduced rating of 10 percent. The appellant's case proceeded to the BVA and on September 18, 1991, the Board issued a decision remanding the case to the RO for additional evidentiary development.

The appellant was admitted to a VA medical center where an EEG was performed on November 9, 1991. The EEG reported normal sleep activity, and no irritation was found. A seizure was not induced during this hospitalization because a VA cardiologist felt the appellant's condition was not stable enough for this procedure. The appellant was discharged with the recommendation that he return for observation and evaluation when he was cleared by a cardiologist. On March 9, 1992, the appellant was readmitted to a VA medical center for observation and evaluation. When the appellant was admitted, he gave the history of his seizure disorder. No seizures were observed during the observation and evaluation.

On April 10, 1992, the RO found that there was no clinical evidence of seizure activity and issued a confirming rating decision. The appellant's case was then returned to the BVA for final action. In the appeal, the appellant's representative argued:

> The rating of [January 4, 1990] clearly violated the aforementioned provisions of 38 C.F.R. 3.344, and was therefore erroneous. We ask that a gradual reduction in evaluation be assigned, provided further evaluation and examination demonstrates that sustained improvement has been achieved.

On December 14, 1992, the BVA issued a final decision denying the appellant's claim for entitlement to restoration of the 100 percent rating, currently rated as 10 percent disabling. The BVA found:

> [I]t [the record] supports a finding that sustained improvement has been shown, and that the improvement has been maintained. While the veteran has testified and has provided lay testimony concerning his seizure disorder, the medical evidence does not support a finding that he has seizures of the frequency and severity which would warrant a 100 percent evaluation.... All postservice electroencephalograms have been normal. After the RO was informed that the veteran was manufacturing his symptoms, a thorough and complete observation and evaluation was performed. There is medical opinion based on that hospitalization that he was exaggerating the frequency of his seizures.

*James Kitchens,* BVA 91–21 215, at 10–11 (Dec. 14, 1992).

## II. ANALYSIS

### A. Failure to Consider Applicable Regulations

In order for the VA to reduce certain service-connected disability ratings, the requirements of 38 C.F.R. § 3.344(a) and (b) must be satisfied. Because the appellant's rating had been in effect for more than five years, 38 C.F.R. § 3.344(a) and (b) (1993) apply. *See* 38 C.F.R. § 3.344(c) (1993).

■ The appellant asserts, inter alia, that his 100 percent disability rating was reduced in violation of 38 C.F.R. § 3.344(a). The Secretary acknowledges that § 3.344(a) is applicable but asserts that the BVA decision complied with this section. That section provides:

> It is essential that the entire record of examinations and the medical-industrial history be reviewed to ascertain whether the recent examination is full and complete, including all special examinations indicated as a result of general examination and the entire case history.... Examinations less full and complete than those on which payments were authorized or continued will not be used as a basis of reduction. Ratings on account of diseases subject to temporary or episodic improvement, e.g., manic depressive or other psychotic reaction, epilepsy, ... will not be reduced on any one examination, except in those instances where all the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated.... Moreover, though material improvement in the physical or mental condition is clearly reflected the rating agency will be considered [sic] whether the evidence makes it reasonably certain that the improvement will be maintained under the ordinary conditions of life.

38 C.F.R. § 3.344(a) (1993). The Court holds that the rating reduction did not comply with § 3.344(a).

The December 12, 1993, Board's decision failed to discuss the applicability of § 3.344(a). The BVA failed to discuss whether the examination on which the reduction was based was at least as full and complete as the examination upon which the appellant's 100 percent rating was awarded. The BVA also failed to discuss whether any improvement in the appellant's condition would be maintained under ordinary conditions of life. Furthermore, the medical evidence of record reveals no diagnosis that shows a material improvement in the appellant's condition. The medical opinion which the BVA relies on suggests that the appellant might be exaggerating the frequency of his seizures, but the doctor who gave the opinion concedes there is no hard evidence to support this opinion and leaves his original diagnosis of "tonic clonic seizure disorder" unchanged. This medical opinion is nothing more than speculation which cannot support a finding of material improvement.

■ The appellant also asserts that his disability rating was reduced in violation of § 3.344(b). The Secretary contends that the rating reduction complied with this section. That section provides:

> If doubt remains, after according due consideration to all the evidence developed by the several items discussed in paragraph (a) of this section, the rating agency will continue the rating in effect, continuing the former diagnosis with the new diagnosis in parentheses, and following the appropriate code there will be added the reference "Rating continued pending reexamination — months from this date, § 3.344."

38 C.F.R. § 3.344(b) (1993). The Court holds that the BVA failed to consider and apply § 3.344(b). At no time did the Board discuss the applicability of this regulatory provision. Where, as here, there is doubt as to whether a veteran's condition has materially improved, the rating should be continued pending reexamination.

The only other evidence that is given as support for the reduction is inconsistencies in statements given by the appellant and the lay witnesses. These statements were the bases of the earlier VA decision that granted the 100 percent rating. Any inconsistencies in the earlier accepted evidence do not support a finding that there is no doubt that the appellant has materially improved, which is required by § 3.344(b). The apparent doubt as to the appellant's present condition re-

quires that this section be discussed and applied.

### B. Burden of Proof

 In the BVA decision affirming the reduction of the appellant's rating, the Board said:

> In accordance with the provisions of 38 U.S.C.A. 7104 (West 1991), following review and consideration of all evidence and material of record in the veteran's claims file, and for the following reasons and bases, it is the decision of the Board that the preponderance of the evidence is against the veteran's claim for a restoration of his 100 percent rating for his service-connected seizure disorder.

*Kitchens,* BVA 91–21 215, at 3. The Board concluded:

> While the veteran has testified and has provided lay testimony concerning his seizure disorder, the medical evidence does not support a finding that he has seizures of the frequency and severity which would warrant a 100 percent evaluation.... The subjective evidence provided by the veteran lacks credibility, and the objective medical evidence does not support the contentions and lay evidence of record. As such, an increased evaluation will be denied.

*Id.* at 10–11. The above quoted statements show that the Board improperly reversed the standard of proof by requiring the appellant to prove entitlement to restoration of his previous 100 percent rating.

 In *Brown v. Brown,* 5 Vet.App. 413 (1993), this Court held that when the issue is whether the RO is justified in reducing a veteran's protected rating, the BVA is required to establish, by a preponderance of evidence and in compliance with 38 C.F.R. § 3.344(a), that a rating reduction is warranted. Here, the Board erroneously reversed the burden, requiring that a preponderance of the evidence demonstrate that an increase is warranted.

### III. CONCLUSION

Where, as here, the Court finds that the BVA has reduced a veteran's rating without observing applicable laws and regulation, such a rating is void ab initio and the Court will set it aside as "not in accordance with the law." 38 U.S.C. § 7261(a)(3)(A); *see Brown, supra; Horowitz v. Brown,* 5 Vet. App. 217 (1993). Accordingly, the BVA decision of December 14, 1992, is REVERSED and the case REMANDED to the Board with instructions to reinstate the appellant's prior 100 percent rating effective the date of the reduction.

KRAMER, Judge, concurring:

In sustaining a rating reduction for epilepsy, the Board of Veterans' Appeals, pursuant to 38 C.F.R. § 4.124a, Diagnostic Code (DC) 8910 (1994), must make, based on adequate evidence of record, a finding as to the frequency and type of seizures that the veteran is experiencing. That finding must then, under the DC, support a rating at the reduced level. Here neither the medical opinion relied on by the Board nor the lay statements provide such evidence, and consequently the Board's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A).