# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 08-3782

WILLIE E. TATUM, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued August 25, 2010                                   Decided November 3, 2010)

*Sandra E. Booth*, of Columbus, Ohio, for the appellant.

*Mark D. Vichich*, with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *David L. Quinn*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before KASOLD, *Chief Judge*, and DAVIS and SCHOELEN, *Judges*.

KASOLD, *Chief Judge*: Veteran Willie E. Tatum appeals through counsel a July 25, 2008, decision of the Board of Veterans' Appeals (Board) that denied entitlement to an initial disability evaluation in excess of 10% for residuals of radical prostatectomy for cancer of the prostate.[1] Mr. Tatum argues that the Board erred when it failed to ensure compliance with 38 C.F.R. § 4.115b, Diagnostic Code (DC) 7528 (2008). The Secretary disputes this contention. For the reasons set forth below, the Board's decision will be set aside and the matters remanded for further adjudication.

---

[1] A radical prostatectomy is the removal of the prostate with its capsule, seminal vesicles, ductus deferens, some pelvic fasciae, and sometimes pelvic lymph nodes. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1553 (31st ed. 2007) [hereinafter "DORLAND'S"].

## I. FACTS

Mr. Tatum served on active duty from May 1958 to March 1980. On October 29, 2001, he underwent a radical prostatectomy to treat prostate cancer, and also underwent additional medical procedures on October 26 and November 2 of that same year. On February 28, 2002, Mr. Tatum filed a disability compensation claim with the regional office (RO) for disability resulting from his prostate surgery.

On August 28, 2002, the Secretary provided Mr. Tatum a compensation and pension examination. The examiner's report notes that no medical records were available for review, but that Mr. Tatum believed he had a Prostate-Specific Antigen (PSA) score of 7 in September 2001 before his prostatectomy in October of the same year.[2] The report also states that Mr. Tatum had episodes of bleeding and hematuria that required another visit to surgery one week later and a third visit to surgery a week after that, but that Mr. Tatum had no problems with hematuria since then and no hospitalizations or recurrent surgery.[3] The report also notes that Mr. Tatum reported to the examiner that he saw his physician on May 12, 2002, his PSA score was 2 at that time, and his physician felt this was a good score. The August 2002 examiner's report concludes that Mr. Tatum's PSA was 0, explains that there were "no modules or masses felt in the area of the prostate," and that Mr. Tatum has "[r]esiduals of prostatectomy for cancer of the prostate to include erectile dysfunction" and "hypertension." Record (R.) at 304.

A September 18, 2002, rating decision granted Mr. Tatum disability compensation in staged periods for prostate cancer associated with herbicide exposure, to wit: (1) From February 28, 2002, through May 1, 2002, at 100%; and (2) from May 1, 2002, at 0% for his residuals. R. at 297-99. To that decision, Mr. Tatum submitted a Notice of Disagreement (NOD) in which he stated: "I am still see[ing] my doctor because of soreness and pain from my prostate surgery. I also believe some percent of disability should be assigned." R. at 286. Some months after he submitted his NOD, Mr. Tatum was hospitalized from December 2 through 6, 2002, for urinary retention problems. R. at 184. A February 2003 rating decision reassigned a 100% rating for the period of October 3, 2001,

---

[2]A PSA is used as a screening test for prostate cancer. DORLAND'S at 107.

[3]Hematuria is blood in the urine. DORLAND'S at 844.

through May 1, 2002, and at 10% thereafter for his residuals.[4]  The RO subsequently issued a Statement of the Case (SOC) on January 6, 2004, that continued a 10% disability rating for residuals of radical prostatectomy for cancer of the prostate from May 2002 onward.  The SOC included the text of 38 C.F.R. § 4.115b, DC 7528, and its corresponding note in its entirety.

Mr. Tatum appealed to the Board and stated: "I am appealing the 10% disability rating because I believe it to be incorrect.  I am still having problems from the surgery and was hospitalized from December 2-6, 2002.  I believe the disability should be higher."  R. at 159.  During the pendency of the Board's review, a May 23, 2006, VA examination report stated, inter alia, that Mr. Tatum's PSA score was 0.  R. at 77 ("Prostate-specific antigen is 0.").  After the Secretary issued a Supplemental Statement of the Case (SSOC) that continued Mr. Tatum's 10% disability rating from May 2002, the Board's July 25, 2008, decision denied an increased rating for the residuals of radical prostatectomy for cancer of the prostate based upon Mr. Tatum's urinary frequency.  This appeal followed.

## II.  ANALYSIS
### A.  Specific Contentions of the Parties
#### 1.  Briefing

Mr. Tatum argues that he erroneously received disability compensation for only two months at 100% before his rating was "reduced," and that the Board erred because the Secretary did not provide § 3.105(e) notice before "reducing" his 100% rating under DC 7528 to 0% in a September 2002 rating decision.[5]  He asserts that his position is supported by the mandatory language of DC 7528 and the Secretary's comments during the notice and comment period prior to the 1994 amendment of DC 7528.  Mr. Tatum argues also that he was prejudiced because, but for the Secretary's asserted errors, a 100% rating would have continued until the Secretary complied with DC 7528.

---

[4]The record on appeal does not reflect whether the RO was aware of Mr. Tatum's December 2002 hospitalization at the time it issued the February 2003 rating decision.

[5]Although Mr. Tatum represents to the Court that he received a total disability rating for the convalescent period for two months from February through May of 2002, the record on appeal reveals that as part of this same claim stream a February 10, 2003, rating decision assigned a total disability rating from October 3, 2001, to May 1, 2002.

According to Mr. Tatum, the rating assigned from May 1, 2002, is void ab initio and should be reversed by the Court. In support of his contention, Mr. Tatum relies on *Hayes v. Brown*, 9 Vet.App. 67, 73 (1996) ("Where VA reduces appellant's rating without observing applicable laws and regulations, the rating is void ab initio and the Court will set aside the decision.") and *Kitchens v. Brown*, 7 Vet.App. 320, 325 (1995) (reversing the Agency's rating reduction based on noncompliance with 38 C.F.R. § 3.344(a) regarding protected ratings, and remanding to the Board to reinstate the prior rating). Mr. Tatum also attempts to distinguish *O'Connell v. Nicholson*, 21 Vet.App. 89 (2008) (holding that when the veteran leaves the appeals process with a higher rating there is no diminished expectation or reduction in benefits that would require § 3.105(e) notice), because DC 7528 is similar to at least 24 other life-threatening disabilities reflected in the rating schedule that mandate the provision of notice and examination, and therefore, the assignment of rating is not the typical staged-rating context addressed in *O'Connell*.[6]

The Secretary argues that the September 2002 rating decision did not "reduce" a rating because Mr. Tatum was assigned a staged rating and the protections of § 3.105(e) apply only to a reduction or discontinuation of "compensation payments currently being made." 38 C.F.R. § 3.105(e). The Secretary also relies on *O'Connell*, *supra*, and further contends that deference is owed to the Agency's interpretation that DC 7528 does not require § 3.105(e) notice when staged ratings are assigned. He further notes that Mr. Tatum has not asserted, at any time, that there has been reoccurrence of his prostate cancer or that he otherwise met the criteria for a continued 100% disability rating at some point after May 1, 2002.

### 2. Oral Argument

In response to questioning from the Court, both parties agreed at oral argument that DC 7528 requires a 100% disability rating that continues for a minimum of six months from the time that treatment (i.e., "surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure") ceases for malignant neoplasms. *See* 38 C.F.R. § 4.115b, DC 7528 (2010); *see also Patton v. West*, 12 Vet.App. 272, 283 (1999) (holding that the Court's statutory directive under 38 U.S.C. § 7261 to "decide all relevant questions of law" allows it to raise issues sua sponte, particularly where

---

[6]A "staged rating" is a rating that looks backwards and retroactively assigns specific ratings to discrete periods. *See Reizenstein v. Shinseki*, 583 F.3d 1331, 1337 (Fed. Cir. 2009).

"substantial interests of justice dictate that the Court require the Secretary to adhere to his own regulatory provisions"). Both parties also agreed that a VA medical examination must be provided some time after the expiration of six months, but that the 100% disability rating potentially can be reduced to a date before the date on which the examination was provided, as long as the results of the examination supported such a reduction and the reduction did not take effect at a time before the expiration of six months following the cessation of treatment for malignant neoplasms.

The Secretary further asserted that the Board did not adequately address the application of DC 7528. Specifically, he stated that the Board failed to address (1) when Mr. Tatum's treatment for malignant neoplasms ceased, which determines the minimum six-month period during which Mr. Tatum's 100% disability rating must continue pursuant to DC 7528, and (2) whether Mr. Tatum suffered a local reoccurrence or metastasis, which would warrant a continued 100% disability rating under DC 7528.

### B. Section 3.105(e) in the Context of DC 7528

Section 3.105(e) is referenced in the DC for malignant neoplasms of the genitourinary system. 38 C.F.R. § 4.115b, DC 7528. Section 4.115b, DC 7528, provides in its entirety:

> 7528 Malignant neoplasms of the genitourinary system .................................... 100
>
> Note– Following the cessation of surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure, the rating of 100 percent shall continue with a mandatory VA examination at the expiration of six months. *Any change in evaluation based upon that or any subsequent examination shall be subject to the provision of Sec. 3.105(e) of this chapter*. If there has been no local reoccurrence or metastasis, rate on residuals as voiding dysfunction or renal dysfunction, whichever is predominant.

38 C.F.R. § 4.115b, DC 7528 (emphasis added). Section 3.105(e) provides, inter alia, that notice and opportunity to present additional evidence will be provided "[w]here the reduction in evaluation of a service connected disability . . . is considered warranted and the lower evaluation would result in a reduction or discontinuance of *compensation payments currently being made*." 38 C.F.R. § 3.105(e) (emphasis added).

### 1. Plain Meaning

The "interpretation of a statute or regulation is a question of law....," *Lane v. Principi*, 339 F.3d 1331,1339 (Fed. Cir. 2003), and our review is performed de novo, *Kent v. Principi*, 389 F.3d

1380, 1384 (Fed. Cir. 2004). We begin with the language and structure of the regulation to determine its plain meaning and defer to the Agency's interpretation so long as it is not inconsistent with the regulation or otherwise plainly erroneous. *Smith v. Nicholson*, 451 F.3d 1344, 1349 (Fed. Cir. 2006) (citing *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997)). If the plain meaning is discernable it generally is controlling. *Johnson v. Brown*, 9 Vet.App. 369, 371 (1996); *see also Smith v. Brown*, 35 F. 3d 1516, 1523 (Fed. Cir. 1994) (noting that the canons of statutory interpretation apply to interpreting regulations).

In contending that he is entitled to a 100% rating through today's date because the Secretary never provided § 3.105(e) notice before his disability rating was "reduced," Mr. Tatum ignores the plain language of the regulations. Although he is correct that DC 7528 clearly predicates a reduction on compliance with the notice provisions of § 3.105(e), and that the provisions are mandatory, the plain meaning of § 3.105(e) is that notice is warranted only when there is a reduction in "compensation payments currently being made." 38 C.F.R. § 3.105(e); *see also O'Connell*, *supra*.

Here, there is no dispute that Mr. Tatum was not receiving compensation at the time the staged rating was assigned. *See* 38 C.F.R. § 3.105 ("The provisions with respect to the date of discontinuance of benefits are applicable to running awards."). The September 2002 rating decision assigned, at the same time, Mr. Tatum's initial 100% disability rating from February 28, 2002, to May 1, 2002, and a 0% disability rating from May 1, 2002. Although disability compensation would flow from this decision, Mr. Tatum was not receiving any such compensation prior to the decision, and, therefore, the notice provisions of § 3.105(e) were not applicable.

Mr. Tatum's assertion that the Secretary's comments in the Federal Register associated with the 1994 amendment to DC 7528 support his argument is unavailing for at least two reasons. *See* 59 Fed. Reg. 2523 (1994) (to be codified at 38 C.F.R. § 4.115b, DC 7528). First, the regulation is clear on its face, and therefore its plain language is controlling. *See Johnson*, *supra*. Second, the Secretary's comments do not specifically address whether § 3.105(e) notice is required in the context of a retrospective application of DC 7528, but the comments are not inconsistent with the plain language of the regulation.

Although Mr. Tatum notes that the Secretary stated "there can be no reduction at the end of six months since any proposed reduction would be based on the examination and the notification

6

process can begin only after the examination is reviewed," and "[t]his method has the advantage of offering the veteran more contemporary notice of any proposed action . . . under the provisions of § 3.105(e)," he fails to note that this quoted passage, taken in context with the full discussion in the Federal Register, is addressing a reduction "*after* the assignment of total benefits" and in response to the commenter's concern that the total disability rating would terminate automatically after six months. *Id*. at 2525 (emphasis added). At most, the comments make clear that, when a claimant is currently in receipt of a convalescent evaluation under DC 7528, a six-month mandatory medical evaluation and § 3.105(e) notice must be provided prior to the reduction of the convalescent evaluation. Neither party disputes the process that must be followed where DC 7528 is applied in these circumstances.

*2. Caselaw*

Although we need not examine the matter further because the plain meaning of the regulation is clear and the Secretary's interpretation is not inconsistent with that plain meaning, *see Smith v. Nicholson* and *Johnson*, both *supra*, we nevertheless note that Mr. Tatum's reliance on *Hayes* and *Kitchens* is misplaced. Both cases address circumstances in which a decision of the Secretary affected the receipt of running awards and neither case applies to this matter. *See Kitchens*, 7 Vet.App. at 322 (noting that a 100% disability rating had been in effect for more than four years before the rating action on appeal reduced his disability rating to 10%); *Hayes*, 9 Vet.App. at 70-71 (noting that a 10% disability rating had been in effect for at least seven years before the RO assigned a noncompensable rating).

Moreover, although Mr. Tatum attempts to substantively distinguish *O'Connell*, he fails. Specifically, he notes that the typical staged rating case addressed in *O'Connell* involved the interpretation of § 3.105(e) by itself and was not decided in the context of a DC that explicitly mandates a medical examination and notice before there is any change in evaluation. While it is true that *O'Connell* involved the interpretation of § 3.105(e) by itself, as opposed to interpretation of a regulatory section referred to in a DC, this is a distinction without a difference; DC 7528 simply refers us to § 3.105(e) and makes no substantive changes thereto. Similarly, although *O'Connell* did not involve a DC that mandated an examination before there was any change in evaluation, this too is a distinction without a difference; DC 7528 does not condition the provision of a medical

7

examination on compliance with § 3.105(e). Rather, as noted above, it is any change in evaluation that must comply with § 3.105(e), and, as noted above, DC 7528 does not alter that requirement. Finally, Mr. Tatum's contention that DC 7528 expressly contains a notice requirement is overstated. Rather than expressly requiring notice, DC 7528 requires compliance with § 3.105(e), and, as discussed in subsection B.1, above, § 3.105(e) requires notice only before there is a reduction in compensation.

### C. Board's Failure To Adjudicate All Issues Reasonably Raised

The record reflects that since the September 2002 rating decision, Mr. Tatum consistently and repeatedly has contended that his disability rating related to his prostate surgery should be higher, and the record reasonably raises issues with regard to the application of DC 7528. As noted above, the parties agreed at oral argument that DC 7528 (1) warrants a 100% disability rating that continues for a minimum of six months from the time that treatment (i.e., "surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure") ceases for malignant neoplasms, and (2) requires that a VA medical examination must be provided some time after the expiration of six months, but that the 100% disability rating potentially can be reduced to a date before the date on which the examination was provided, as long as the results of the examination support such a reduction and the reduction does not take effect before the expiration of six months following the cessation of treatment for malignant neoplasms. *See* 38 C.F.R. § 4.115b, DC 7528.

The parties' agreement at oral argument cannot bind the Court or otherwise serve to overturn a final Board decision. *See Smith* and *Johnson*, both *supra*; *see also* 38 U.S.C. § 7104 (Board renders final decisions for the Secretary); *Clemons v. Shinseki*, 23 Vet.App. 1, 2 (2009) ("The mere fact that the parties have reached an agreement ... does not make it so."); *Robinson v. Shinseki*, 22 Vet.App. 440, 446 (2009) ("The Court should not mechanically accept the agreement of the parties that there is error in a Board decision." (citing *Lukosevicz v. Dep't of Labor*, 888 F.2d 1001, 1003 n.2 (3rd Cir.1989))). Nevertheless, the parties' agreed interpretation of DC 7528 is supported by the plain meaning of the regulation.

The operative phrase of DC 7528 is "following the cessation of surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure, the rating of 100 percent shall continue with a mandatory VA examination at the expiration of six months." 38 C.F.R. § 4.115b, DC 7528. With

use of the words "shall" and "mandatory," the Secretary has removed from the decisionmaker the discretion to reduce or otherwise change a 100% disability rating during the six-month period following treatment for malignant neoplasms, and until a medical examination report supports such a change. *See Lopez v. Davis*, 531 U.S. 230, 241 (2001) (noting that the term "shall," as opposed to "may," imposes mandatory obligations). Additionally, DC 7528 specifies that *any* change in a 100% rating is to be "based upon that or any other subsequent examination," and it is the information in a medical opinion, and not the date the medical opinion was provided that is relevant when assigning an effective date. *See McGrath v. Gober*, 14 Vet.App. 28, 35 (2000) (finding Board error where the Board assigned a 1994 effective date based upon a 1994 medical opinion despite that fact that information provided in the medical opinion supported a 1992 effective date); 59 Fed. Reg. at 2526 ("The application of total convalescence evaluations will take into account the wide array of possible side-effects and complications of treatment by the specific findings of a current medical examination."); *see also* 38 U.S.C. § 5110 (effective dates generally are determined "in accordance with the facts found," but not earlier than the date of the claim).

Moreover, the record supports the Secretary's view at oral argument that the Board did not adequately address two matters: (1) The date of cessation of Mr. Tatum's treatment for malignant neoplasms, which determines the minimum six-month period during which Mr. Tatum's 100% disability rating must continue, and (2) whether Mr. Tatum suffered a local reoccurrence or metastasis, which would warrant a continued 100% disability rating. 38 C.F.R. § 4.115b, DC 7528. As noted above, DC 7528 ties the minimum six-month period for the mandatory 100% disability rating to the date of cessation of Mr. Tatum's treatment for malignant neoplasms, and specifies that any change in a 100% rating is to be "based upon that or any other subsequent examination."

The Board provided no discussion regarding whether any of Mr. Tatum's postsurgery care, including his December 2002 hospitalization, constituted treatment of malignant neoplasms within the meaning of DC 7528, or whether he suffered a local reoccurrence or metastasis any time between the date of his prostatectomy and the August 2002 examination report relied on by the Board to determine the appropriate disability rating for Mr. Tatum. The Board's failure to address these issues frustrates judicial review. *Robinson v. Peake*, 21 Vet.App. 545, 552 (2008) (holding that the Board is required to consider all issues raised either by the claimant or by evidence of record); *Allday v.*

9

*Brown*, 7 Vet.App. 517, 527 (1995) (noting that the Board's statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court"). Remand is warranted. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (remand is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate"); *see also Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991) (noting that Court is not to conduct de novo factfinding but rather, should remand for the Board to find facts in the first instance).

On remand, Mr. Tatum may present, and the Board must consider, any additional evidence and argument in support of the matters remanded. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). These matters are to be provided expeditious treatment on remand in accordance with 38 U.S.C. § 7112.

## III. CONCLUSION

Upon consideration of the foregoing, the Board's July 25, 2008, decision is SET ASIDE and the matters REMANDED for further adjudication consistent with this decision.