﻿Citation Nr: AXXXXXXXX
Decision Date: 05/20/19 Archive Date: 05/20/19

DOCKET NO. 181218-2893
DATE: May 20, 2019

ORDER

Entitlement to an effective date prior to September 14, 2016 for a separate evaluation for service-connected residuals, cold injury to the right lower extremity with Raynaud’s syndrome and peripheral neuropathy (previously evaluated as Raynaud’s syndrome), evaluated as 30 percent disabling, is denied.

Entitlement to an effective date prior to September 14, 2016 for a separate evaluation for service-connected residuals, cold injury to the left lower extremity with Raynaud’s syndrome and peripheral neuropathy (previously evaluated as Raynaud’s syndrome), evaluated as 30 percent disabling, is denied.

Entitlement to an effective date prior to September 14, 2016 for the grant of the increased evaluation for service-connected residuals, cold injury to the right lower extremity with peripheral arterial insufficiency, from 40 to 60 percent disabling, is denied.

Entitlement to an effective date prior to September 14, 2016, for the grant of the increased evaluation for service-connected residuals, cold injury to the left lower extremity with peripheral arterial insufficiency, from 40 to 60 percent disabling, is denied.

Entitlement to an effective date prior to September 14, 2016 for the grant of service connection for residuals, cold injury to the nose, is denied.

FINDINGS OF FACT

1. The March 2005 rating decision granting service connection for cold injury residuals to the bilateral feet is final. 

2. The February 2014 rating decision granting service connection for Raynaud’s syndrome, and assigning a 40 percent rating under Diagnostic Code 7117 effective January 27, 2014 is final. 

3. The increased ratings from 40 to 60 percent assigned to each lower extremity for service-connected cold injury residuals resulting in peripheral arterial insufficiency arose as a result of the September 14, 2016 VA examination findings, without a formal or informal claim for an increased rating. There is no probative evidence establishing that the Veteran satisfied the schedular rating criteria for these increased ratings at any time within the applicable period prior to September 14, 2016. 

4. The replacement of a single 40 percent rating under Diagnostic Code 7117 with separate 30 percent ratings under Diagnostic Code 7122 for each lower extremity due to service-connected cold injury residuals resulting in Raynaud’s syndrome and peripheral neuropathy arose as a result of the September 14, 2016 VA examination findings, without a formal or informal claim for an increased rating. There is no probative evidence establishing that this alteration should have occurred at any time within the applicable period prior to September 14, 2016. 

5. The Veteran’s claim of entitlement to service connection for cold injury residuals to the nose was reasonably raised by the September 14, 2016 VA examination findings, and the record does not include any formal or informal communication indicating intent to apply for such a benefit prior to September 14, 2016.

CONCLUSIONS OF LAW

1. The March 2005 and February 2014 rating decisions are final. 38 U.S.C. § 7104; 38 C.F.R. §§ 3.156, 20.302, 20.1103.

2. The criteria for entitlement to an effective date prior to September 14, 2016 for a separate evaluation for service-connected residuals, cold injury to the right lower extremity with Raynaud’s syndrome and peripheral neuropathy (previously evaluated as Raynaud’s syndrome), evaluated as 30 percent disabling, have not been met. 38 U.S.C. § 5110; 38 C.F.R. §§ 3.400, 4.104, Diagnostic Codes 7117, 7122. 

3. The criteria for entitlement to an effective date prior to September 14, 2016 for a separate evaluation for service-connected residuals, cold injury to the left lower extremity with Raynaud’s syndrome and peripheral neuropathy (previously evaluated as Raynaud’s syndrome), evaluated a 30 percent disabling, have not been met. 38 U.S.C. § 5110; 38 C.F.R. §§ 3.400, 4.104, Diagnostic Codes 7117, 7122.

4. The criteria for entitlement to an effective date prior to September 14, 2016 for the grant of the increased evaluation for service-connected residuals, cold injury to right lower extremity with peripheral arterial insufficiency from 40 to 60 percent disabling, have not been met. 38 U.S.C. § 5110; 38 C.F.R. §§ 3.400, 4.104, Diagnostic Code 7115. 

5. The criteria for entitlement to an effective date prior to September 14, 2016, for the grant of the increased evaluation for service-connected residuals, cold injury to left lower extremity with peripheral arterial insufficiency, from 40 to 60 percent disabling, have not been met. 38 U.S.C. § 5110; 38 C.F.R. §§ 3.400, 4.104, Diagnostic Code 7115.

6. The criteria for entitlement to an effective date prior to September 14, 2016 for the grant of service connection for residuals, cold injury to the nose, have not been met. 38 U.S.C. § 5110; 38 C.F.R. §§ 3.1, 3.400.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served honorably on active duty from February 1943 to October 1945. He is the recipient of two Purple Heart Medals and five Bronze Stars, among other commendations.

Procedural History

The Veteran has been in receipt of separate compensable disability ratings for service-connected cold injury residuals for each lower extremity since August 12, 2004, the date of his first claim seeking compensation benefits from the United States Department of Veterans Affairs (VA). See August 12, 2004 VA form 21-4138, Statement in Support of Claim, “This letter is to establish my informal claim for SCDC for frostbite of my feet;” see also March 2005 rating decision. In a February 2014 rating decision, the evaluations assigned for each lower extremity were increased to 40 percent, effective January 27, 2014, and service connection was granted for Raynaud’s syndrome at 40 percent disabling, effective January 27, 2014. The Veteran did not appeal this rating decision. 

In July 2015, the Board of Veterans’ Appeals (Board) issued a decision remanding a claim of entitlement to a special housing adaptation grant as inextricably intertwined with a pending claim of entitlement to specially adapted housing. In a February 2016 rating decision, the RO denied entitlement to specially adapted housing and the Veteran filed a notice of disagreement received later that month. In March 2016, the RO issued a Supplemental Statement of the Case denying entitlement to a special housing adaptation grant and a Statement of the Case denying entitlement to specially adapted housing. 

In March 2016, the Veteran submitted medical evidence demonstrating that Warfarin had been prescribed for blood clots in his legs and provided a lay statement indicating he used an assistive device to ambulate. Based on this evidence, the RO ordered VA examinations to assess the Veteran’s artery/veins and cold injury residuals. These VA examinations were performed on September 14, 2016. 

In lieu of a VA form 9, Substantive Appeal, the RO considered the Veteran’s March 2016 submission of medical evidence and a lay statement as a request for appellate review of the March 2016 Statement of the Case’s denial of entitlement to specially adapted housing. Due to the favorable findings from the September 2016 VA examination, the RO granted entitlement to specially adapted housing in a February 2017 rating decision. This was considered a complete grant of benefits and resolved the February 2016 notice of disagreement in full.

This February 2017 rating decision also increased the Veteran’s disability ratings for service-connected cold injury residuals for peripheral artery insufficiency in each lower extremity from 40 to 60 percent, effective September 14, 2016; replaced the Veteran’s 40 percent rating for service-connected Raynaud’s syndrome with separate 30 percent ratings for service-connected cold injury residuals for Raynaud’s syndrome and peripheral neuropathy in each lower extremity, effective September 14, 2016; and granted service connection for cold injury residuals of the nose, with a 20 percent rating effective September 14, 2016. The replacement of the 40 percent rating for Raynaud’s syndrome with separate 30 percent disability ratings for bilateral lower extremity cold injury residuals resulting in Raynaud’s syndrome and peripheral neuropathy did not trigger the rules governing reduction of ratings, given that the Veteran’s combined disability rating increased as a result of this change. See O’Connell v. Nicholson, 21 Vet. App. 89, 93 (2007); see also Tatum v. Shinseki, 24 Vet. App. 139, 142-44 (2010); 38 C.F.R. § 4.25. 

In December 2017, the Veteran filed a timely notice of disagreement challenging the effective dates assigned for all cold injury residuals claims adjudicated in the February 2017 rating decision. He asserted that the increased ratings assigned for his service-connected cold injury residuals in the bilateral legs and the grant of service connection for a cold injury-residual in the nose should date back to his separation from active duty on October 1, 1945. In an August 2018 Statement of the Case, all denials for the claims on appeal were confirmed and continued. Later that month the Veteran filed a VA form 9, Substantive Appeal, seeking the Board’s appellate review. On the same day, he submitted a Rapid Appeals Modernization Program (RAMP) opt-in form requesting a higher-level review. The Veteran’s RAMP opt-in request was honored, his Board appeal was withdrawn from the legacy appeal system, and his claims were forwarded to the RO for a higher-level review adjudication, which was rendered in a November 2018 RAMP rating decision. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). The claims were again denied in this November 2018 RAMP rating decision, and in December 2018, the Veteran requested an appeal before the Board, where he elected the direct review docket.

Under the direct review docket, evidence received after the higher-level review rating decision cannot be considered. Here, a medical opinion was received in February 2019, after the issuance of the November 2018 higher-level review rating decision and the Board may not consider this evidence. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 20.300). The Board has considered the Veteran’s March 2019 written statement to the President, to the extent that it contains argument, but has not considered the evidence attached to the statement. Id. If the above referenced evidence is relevant to the Veteran’s claims, he may file a Supplemental Claim and submit or identify this evidence. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501). If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

In a January 2019 rating decision, all disability ratings for service-connected cold injury residuals of the lower extremities were replaced by the grant of service connection for loss of use of both feet, assigned a 100 percent disability rating effective September 17, 2018. The Veteran was also awarded special monthly compensation based on loss of use of both feet, effective September 17, 2018. To date, the Veteran has not challenged the determinations rendered in the January 2019 rating decision.

As to the Veteran’s claim seeking a special housing adaptation grant, as remanded in the July 2015 Board decision and readjudicated in the March 2016 Supplemental Statement of the Case, this claim remains in appellate status. When the Veteran was granted entitlement to specially adapted housing in the February 2017 rating decision, the RO sent correspondence to the Veteran’s representative seeking clarification on whether the Veteran wished to continue pursuing his claim for entitlement to a special housing adaptation grant. No response was received, and therefore, this claim remains on appeal in the legacy appeal system. This claim will be the subject of a future Board decision. 

Merits Analysis

The Veteran’s primary contention is that the noninitial ratings assigned in the February 2017 rating decision for service-connected residuals, cold injury to the bilateral lower extremities with peripheral artery insufficiency, and service-connected residuals, cold injury to the bilateral lower extremities with Raynaud’s syndrome and peripheral neuropathy, should date back to October 1, 1945, the date of his separation from active duty. 

In a lay statement received with the December 2017 notice of disagreement, the Veteran indicated that he sustained a cold-weather injury on December 24, 1944 while serving in World War II. He stated that he had been suffering from residuals related to this injury for most of his life. He first sought treatment in 1946 with Dr. MH, who told him he experienced nerve damage as a result of his cold-weather injuries. He asserted that when he discharged from active duty service, he was never notified of the VA claims process, and as such, he was seeking an effective date of October 1, 1945, the date of his separation from active duty service, for all claims on appeal. See also January 2018 VA form 21-4138, Statement in Support of Claim; see also March 2019 written argument addressed to the President. In a sworn statement received in May 2018, it was confirmed that the records of Dr. MH were no longer available. 

As to the claims involving the lower extremities, the Veteran’s appeal requests an effective date earlier than September 14, 2016 for the increased ratings assigned for his service-connected cold injury residuals of the bilateral lower extremities with peripheral arterial insufficiency and an effective date earlier than September 14, 2016 for the award of separate disability ratings assigned for his service-connected cold injury residuals of the bilateral lower extremities with Raynaud’s syndrome and peripheral neuropathy. Despite this, the Veteran’s primary argument on appeal is that he is entitled to an earlier effective date of October 1, 1945 for the award of service connection for these disabilities. Regrettably, this request must be denied under the law, as set forth below. 

The Veteran first filed a claim seeking “SCDC [service-connected disability compensation] for frostbite of [his] feet” in a VA form 21-4138, Statement in Support of Claim, received on August 12, 2004. Following evidentiary development, the Veteran was granted service connection for residuals, cold injury to the bilateral feet, in a March 2005 rating decision, and assigned separate 10 percent ratings, effective August 12, 2004. In a VA form 21-4138, Statement in Support of Claim, received on August 8, 2005, the Veteran indicated that his “feet and legs [woke him up] numerous times at night with pain and cramping.” This statement was reasonably interpreted as a request for higher initial ratings for his service-connected residuals, cold injury to the bilateral feet. Nothing in this statement can be reasonably interpreted as a request for an earlier effective date for the award of service connection. A follow-up statement received in February 2006 confirmed that the Veteran was seeking an increased rating for his service-connected bilateral foot disability, due to allegations of worsening symptoms. See February 2006, VA form 21-4138, Statement in Support of Claim.

In a June 2006 rating decision, the Veteran was awarded an increased rating of 30 percent for each foot, effective August 12, 2004. As this was the highest rating allowed under the applied Diagnostic Code 7122, 38 C.F.R. § 4.104, this was considered a complete grant of the benefits on appeal, and the Veteran was notified that his August 2005 notice of disagreement was fully resolved. The Veteran did not file any notice of disagreement challenging the determinations made in the June 2006 rating decision. Consequently, the March 2005 rating decision, which granted entitlement to service connection for residuals, cold injury to the bilateral feet, became final. 38 C.F.R. §§ 20.302, 20.1103.

In a February 2014 rating decision, the RO granted entitlement to service connection for Raynaud’s syndrome, and assigned a 40 percent disability rating under Diagnostic Code 7117 effective January 27, 2014. This rating decision arose sua sponte as a result of evidence developed in response to the Board’s August 2012 remand directives. As noted in this rating decision, January 27, 2014 was the first instance of diagnosis of Raynaud’s syndrome in the medical evidence. The Veteran did not file a notice of disagreement within the one year following notification of this rating decision. 38 C.F.R. § 20.302. While the Veteran filed a post-rating decision lay statement in February 2014, it was redundant of his prior medical history and alleged complaints/symptoms. In this regard, the lay statement was not new and material and failed to toll the finality of the February 2014 rating decision under 38 C.F.R. § 3.156(b). Consequently, the February 2014 rating decision became final. 38 C.F.R. § 20.1103.

As to the Veteran’s December 2017 assertion that he is entitled to an effective date of October 1, 1945 for the grant of service connection for residuals, cold injury to the bilateral lower extremities with peripheral arterial insufficiency and with Raynaud’s syndrome and peripheral neuropathy, the law is very clear that there is no free-standing claim for an earlier effective date for the award of service connection. See Rudd v. Nicholson, 20 Vet. App. 296 (2006) (VA claimants may not properly file, and VA has no authority to adjudicate, a free-standing claim seeking an earlier effective date for service connection in an attempt to overcome the finality of an unappealed RO decision). 

Here, the Veteran did not timely challenge the effective date assigned for the grant of service connection for residuals, cold injury to the bilateral lower extremities (later characterized as residuals, cold injury to the bilateral lower extremities with peripheral arterial insufficiency), in the March 2005 rating decision, which has become final. The Veteran also failed to timely challenge the effective date for the award of service connection for Raynaud’s syndrome in the February 2014 rating decision, which has become final. (Note: In the February 2017 rating decision, the single 40 percent rating assigned for Raynaud’s syndrome was replaced with separate 30 percent ratings for each lower extremity, characterized as residuals, cold injury to bilateral lower extremities with Raynaud’s syndrome and peripheral neuropathy). Having failed to disagree with the effective dates originally assigned when service connection was granted, the Veteran cannot now—more than 14 years after the March 2005 rating decision and 5 years after the February 2014 rating decision—claim that he should have been awarded service connection dating back to October 1, 1945. As to the effective dates assigned for the grant of service connection in the March 2005 and February 2014 rating decisions, those determinations are final. 

The only other legal method to attack these final decisions is to file a motion to revise the final rating decisions based upon clear and unmistakable error (CUE). 38 C.F.R. § 3.105(a). The Board will not expand the issues on appeal to include a CUE claim attacking the prior final rating decisions. The Veteran could be prejudiced if the Board construed his statements and filings as raising such a claim because the claim is only implied, at best, and he has not had the opportunity to develop any such claim or meet the pleading requirements. Moreover, the Board is precluded from considering a CUE challenge to a final rating decision in the first instance. Jarrell v. Nicholson, 20 Vet. App. 326 (2006). The Board’s determination in this respect does not prevent the Veteran from filing a separate claim of CUE challenging one or more of the earlier rating decisions. Again, there are specific pleading requirements for such claims and the Veteran should consult with his representative, if he wishes to pursue this avenue of review. 

The Board acknowledges the Veteran’s request to have his effective dates automatically retroactively assigned to October 1, 1945 due to his allegation that “when [he] got out of the service no one was there to help [him] with [his] claim or give [him] information about the process,” and thus, this circumstance prolonged the filing of his claims for VA compensation benefits. See December 2017 lay statement. While the Board has considered the Veteran’s argument, the applicable law and regulations are clear regarding assignment of effective dates, and the undersigned must apply the law as written. Thus, the Board is without authority to grant the Veteran’s requested relief on an equitable basis. See 38 U.S.C. § 503; see also Harvey v. Brown, 6 Vet. App. 416, 425 (1994).

Next, the Board turns to the question of whether the Veteran is entitled to an effective date earlier than September 14, 2016 for the award a separate 30 percent ratings for service-connected cold injury residuals for each lower extremity due to Raynaud’s syndrome and peripheral neuropathy under Diagnostic Code 7122, 38 C.F.R. § 4.104, in lieu of a single 40 percent disability rating for Raynaud’s syndrome under Diagnostic Code 7117. 

In February 2014, the Veteran was granted service connection for Raynaud’s syndrome and assigned a single 40 percent disability rating under Diagnostic Code 7117, effective January 27, 2014. As noted above, no new and material evidence (the February 2014 submission was not new or material) or notice of disagreement was filed within the one-year period following notification of the rating decision. Consequently, the rating decision because final. 38 C.F.R. §§ 3.156, 20.302, 20.1103.

Following the finality of this rating decision, it was not until the September 14, 2016 VA examination—ordered as a result of the Veteran’s March 2016 submission received in response to the March 2016 Statement of the Case’s denial of entitlement to specially adapted housing—that the record contained clinical evidence demonstrating a worsening of the Veteran’s service-connected cold injury residuals of the bilateral lower extremities with Raynaud’s syndrome and peripheral neuropathy. Upon review of the VA examination findings, the RO determined it would be more favorable to the Veteran to assign separate 30 percent evaluations for each lower extremity under Diagnostic Code 7122 due to the documented symptoms, in lieu of a single 40 percent disability rating under Diagnostic Code 7117. The Board agrees with this assessment and finds no clinical evidence in the interim period between January 27, 2014 and September 14, 2016 which supports an earlier effective date for this alteration. Neither the Veteran nor his representative have identified any evidence supporting a different a conclusion. To this end, the Veteran’s appeal is denied. 

The Board shall now address whether the Veteran is entitled to an effective date earlier than September 14, 2016 for the noninitial increased rating of 60 percent granted for each service-connected lower extremity with cold injury residuals resulting in peripheral arterial insufficiency, as adjudicated in the February 2017 rating decision. 

In a February 2014 rating decision, the Veteran was awarded an increased rating from 10 percent to 40 percent under Diagnostic Code 7115, 38 C.F.R. § 4.104, for each lower extremity due to service-connected cold injury residuals with peripheral arterial insufficiency. This increased rating was made effective January 27, 2014. In a post-rating decision February 2014 submission, the Veteran reported persistent complaints in his lower extremities. As noted above, this submission was redundant of complaints already of record within the appellate period and did not constitute new and material evidence sufficient to toll the finality of the February 2014 rating decision. 38 C.F.R. § 3.156. Additionally, the Veteran did not file a notice of disagreement or new and material evidence within the one year following notification of the February 2014 rating decision. Id.; see also 38 C.F.R. § 20.302. As such, this rating decision, became final. 38 C.F.R. § 20.1103.

Following the final February 2014 rating decision, the Veteran did not file a formal or informal request seeking increased ratings for his service-connected bilateral lower extremity cold injury residuals with peripheral arterial insufficiency. Instead, a VA examination was scheduled in September 2016 as a result of the March 2016 submission submitted in response to the denial of entitlement to specially adapted housing in the March 2016 Statement of the Case. 

Thus, the question for resolution is whether the Veteran met the criteria for a higher 60 percent rating for each extremity due to service-connected cold injury residuals with peripheral arterial insufficiency under Diagnostic Code 7115, 38 C.F.R. § 4.104, during the interim period between January 27, 2014 and September 14, 2016. The Board declines to include the period prior to January 27, 2014 in the present evaluation, as the Veteran was awarded a 40 percent rating for each lower extremity, effective on January 27, 2014, in the final, unappealed February 2014 rating decision. 

Review of the available evidence shows that the Veteran did not experience claudication on walking less than 25 yards on a level grade at 2 miles per hour and either persistent coldness of the extremity or ankle/brachial index of 0.5 or less in the period prior to September 14, 2016 sufficient to warrant an earlier effective date for the increased 60 percent evaluation for each lower extremity, as made effective on September 14, 2016 in the February 2017 rating decision. An ankle/branchial index reading was recorded in December 2014 and showed a normal index greater than 1.0 in each extremity, which was not indicative of claudication, as set forth in the interpretative chart included in the December 2014 VA treatment record. VA treatment records dated in October and November of 2014; June and November of 2015; and January, March, and May of 2016 showed the Veteran was without complaints of claudication in the lower extremities. It was not until the September 14, 2016 VA examination that the Veteran exhibited objective signs sufficient to warrant a 60 percent rating under the criteria set forth in Diagnostic Code 7115. 

During the September 14, 2016 VA examination, the examiner noted that the Veteran experienced claudication on walking less than 25 yards on a level grade at 2 miles per hour and peristent coldness in each lower extremity. These findings were sufficient to support a 60 percent rating in each lower extremity under Diagnostic Code 7115, 38 C.F.R. § 4.104. At no point in the applicable period prior to this date, did the Veteran satisfy the diagnostic criteria for a 60 percent rating in each lower extremity. Consequently, there is no basis to award an effective date earlier than September 14, 2016 for the increased rating from 40 percent to 60 percent in each lower extremity due to service-connected cold injury residuals with peripheral arterial insufficiency. To this end, the Veteran’s appeal is denied. 

Lastly, the Board will address the Veteran’s appeal seeking an effective date earlier than September 14, 2016 for the grant of service connection for residuals, cold injury to the nose. The Veteran argues he should be awarded an effective date of October 1, 1945, the date he was discharged from active duty, for the grant of this service-connected disability.

Generally, the effective date of an award of disability compensation, i.e., service connection, is the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. If a claim for service connection is received within one year after separation from service, the effective date of entitlement is the day following separation or the date entitlement arose. 

38 C.F.R. § 3.400(b)(2)(i).

It must be noted that the provisions of 38 U.S.C. § 5110(a) refer to the date an “application” is received; and “date of receipt” means the date on which a claim, information, or evidence was received by VA. 38 C.F.R. § 3.1(r). 

Prior to March 24, 2015, the applicable regulations used the terms “claim” and “application” interchangeably, and they were defined broadly in 38 C.F.R. § 3.1(p) to include “a formal or informal communication in writing requesting a determination of entitlement, or evidencing a belief in entitlement, to a benefit.” An intent to apply for benefits is an essential element of any claim, whether formal or informal. Criswell v. Nicholson, 20 Vet. App. 501 (2006). An informal claim is any communication or action, indicating an intent to apply for one or more benefits under the laws administered by VA. Such informal claim must identify the benefit sought. 38 C.F.R. § 3.155(a) (2014).

Effective March 24, 2015, VA amended its adjudication regulations to require that all claims governed by VA’s adjudication regulations be filed on standard forms prescribed by the Secretary. See 79 Fed. Reg. 57660 (Sept. 25, 2014). These amendments apply to claims and appeals filed on or after March 24, 2015. 

Here, the Veteran’s claim of entitlement to service connection for residuals, cold injury to the nose, was reasonably raised by the record due to the objective findings recorded at the September 14, 2016 VA examination and was adjudicated in a February 2017 rating decision. Thus, in reviewing the evidence, the Board has focused its review on whether any formal or informal claims for such a benefit were received prior to March 24, 2015, and only formal claims submitted on the standardized form, thereafter.

Having fully reviewed the record, there is no evidence that the Veteran filed any claim (formal or informal) for VA benefits due to cold injury residuals to the nose prior to such a claim being reasonably raised by the record in the results of the September 14, 2016 VA examination. The record contains no formal or informal statements prior to this date evidencing the Veteran’s intent to seek service-connected benefits for cold injury residuals to the nose. Markedly, neither the Veteran nor his representative have pinpointed to any evidence of record demonstrating the presence of such a formal or informal claim. This is because no such evidence exists. 

While there are references in the record documenting that the Veteran experienced frostbite to his nose during active duty service (See e.g., August 2013 VA dermatology note), there is no indication that he experienced residuals from this incident until the September 14, 2016 VA examination findings. Medical evidence reflecting treatment, a diagnosis, or report of history does not constitute, by itself, an informal original claim for service connection under 38 C.F.R. § 3.155(a) (2014), "because the mere presence of the medical evidence does not establish an intent on the part of the veteran to seek" service connection for that condition. See MacPhee v. Nicholson, 459 F.3d 1323, 1326(Fed. Cir. 2006).

At VA examinations conducted in January 2005, May 2006, March 2008, and January 2014, there was no mention of or objective findings of cold injury residuals to the nose. In fact, at the January 2005 VA examination, the Veteran reported in-service cold injury to his feet, but explicitly denied that other areas of the body were affected and at the March 2008 VA examination, the nose was clinically examined and found to be normal. 

Moreover, even if the Veteran experienced cold injury residuals to the nose prior to the September 14, 2016 VA examination, he did not express the necessary intent to seek VA compensation benefits for such a disability at any time prior to September 14, 2016. Thus, it is apparent from the evidence that entitlement to service connection for cold injury residuals to the nose did not arise at any time prior to September 14, 2016 and the Board finds no error in the RO’s assignment of this effective date in the February 2017 rating decision. 

With respect to the Veteran’s December 2017 argument that he did not have assistance in filing VA compensation claims immediately following separation from active duty, and thus, he should be granted an effective date of October 1, 1945 for this service-connected disability out of principles of fairness; he is seeking equitable relief, and the Board is without the authority to grant the benefits sought on an equitable basis. 38 U.S.C. § 503; Harvey, 6 Vet. App. at 425. In light of the above analysis, the Veteran’s appeal seeking an earlier effective date for the grant of service connection for cold injury residuals to the nose must be denied. 

The Board acknowledges the Veteran’s honorable service to our country and is sympathetic to the Veteran’s circumstances; however, the Board must apply the law as it exists. See Owings v. Brown, 8 Vet. App. 17, 23 (1995) (providing that the Board must apply the law as it exists and is not permitted to award benefits based on sympathy for a particular appellant). The Board is grateful to the Veteran for his honorable service and regrets that a more favorable outcome could not be reached in this appeal. 

 

Cynthia M. Bruce

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD M. Galante, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.