# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 06-1925

RANDALL D. REIZENSTEIN, APPELLANT,

V.

JAMES B. PEAKE, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 20, 2008                          Decided    July 16, 2008   )

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Thomas E. Sullivan,* with whom *Paul J. Hutter*, Acting General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Gayle E. Strommen*, Deputy Assistant General Counsel; were on the brief, all of Washington, D.C., for the appellee.

Before HAGEL, LANCE , and DAVIS, *Judges*.

HAGEL, *Judge*: This case is before the Court to resolve the question of whether 38 C.F.R. § 3.343(a), regarding the continuation of total disability ratings, applies when the Board of Veterans' Appeals (Board) assigns staged ratings that include a temporary total disability rating and a subsequent lower rating in the same decision.

Randall D. Reizenstein, through counsel, appeals a March 7, 2006, Board of Veterans' Appeals (Board) decision that (1) denied entitlement to an initial disability rating for post-traumatic stress disorder in excess of 30% from November 7, 1996, to December 1, 1996; (2) granted a 50% disability rating from December 2, 1996, to March 21, 1998; (3) granted a temporary total disability rating from March 22, 1998, to May 5, 1999; and (4) denied a disability rating in excess of 30% from May 6, 1999. R. at 1-17. For the reasons that follow, the Court will affirm the Board's March 2006 decision.

## I. FACTS

Mr. Reizenstein served on active duty in the U.S. Marine Corps from May 1968 to May 1970, including service in Vietnam. R. at 2; *see also* R. at 116. He also served in the U.S. Army from November 1974 to July 1977, and in the U.S. Navy from December 1980 to February 1981. *Id.*

In October 1996, he filed a claim for VA compensation for post-traumatic stress disorder. R. at 23. In December 1996, he underwent a VA "post-traumatic stress disorder exam," although that examination focused mainly on his claim for a back condition. R. at 49-51. The examination gave an "impression" of post-traumatic stress disorder. R. at 51. A private physician examined Mr. Reizenstein in December 1996, at the request of VA, and gave a diagnosis of alcohol abuse, major depression, and mixed personality disorder with antisocial features, and assigned a Global Assessment of Functioning score of 50.[1] R. at 48. Also in December 1996, another private physician, again on referral from VA, examined Mr. Reizenstein and diagnosed chronic post-traumatic stress disorder, and alcohol and polysubstance abuse, and assigned a Global Assessment of Functioning score of 50, noting that the highest score in the past year was 75. R. at 57-59. In August 1997, a VA regional office issued a rating decision in which it denied entitlement to VA benefits because it found there was "no confirmed diagnosis of post-traumatic stress disorder." R. at 116.

In March 1998, Mr. Reizenstein was admitted to the Grand Junction, Colorado, VA medical center "Psychiatry Service" with an "initial impression" of alcohol intoxication, hallucinations, dysthymia,[2] hypertension, and post-traumatic stress disorder. R. at 135. He remained in the hospital for four days, and upon discharge was diagnosed with, among other conditions, alcohol dependence, "post-traumatic stress disorder by history," dysthymia, and personality disorder. R. at 134. The discharge report reveals "[h]allucinations, visual, with alcohol only; auditory with alcohol only." *Id.* Mr. Reizenstein was assigned a Global Assessment of Functioning score of "current 31, highest is a 41." *Id.*

---

[1] A Global Assessment of Functioning score represents "the clinician's judgment of the individual's overall level of functioning" and is "useful in planning treatment and measuring its impact[] and in predicting outcome." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 30 (4th ed. 1994); *see Richard v. Brown*, 9 Vet.App. 266, 267 (1996).

[2] Dysthymia is a disorder characterized by symptoms of mild depression. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 590 (31st ed. 2007).

In August 1998, Mr. Reizenstein, through counsel, filed a Notice of Disagreement with the August 1997 regional office decision. R. at 140-45. In April 1999, the regional office issued a rating decision granting service connection for post-traumatic stress disorder and assigning a 30% disability rating effective November 7, 1996. R. at 153-56. The regional office stated that it was resolving doubt about the origin of Mr. Reizenstein's condition in his favor. R. at 154-55. In June 1999, Mr. Reizenstein filed a Notice of Disagreement with the assigned disability rating. R. at 164-66.

In an October 1999 rating decision and an October 2000 Statement of the Case, the regional office continued the 30% disability rating, and in June 2001, the Board denied entitlement to a higher initial disability rating. R. at 178-80, 191-200, 246-54. Mr. Reizenstein appealed and, in October 2002, this Court granted a joint motion for remand in order for the Board to provide an adequate discussion of Mr. Reizenstein's entitlement to staged ratings. R. at 258, 261.

In May 2003, the Board remanded Mr. Reizenstein's claim for compliance with the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (codified in part at 38 U.S.C. § 5103), as well as to afford Mr. Rezienstein a psychiatric examination to reconcile the conflicting reports regarding the severity and nature of his psychiatric disorder. R. at 315-19.

In May 2004, Mr. Reizenstein underwent a psychiatric examination performed by a private physician at the request of VA. R. at 347-50. That physician had also examined Mr. Reizenstein in December 1996. The examiner stated:

> [Mr. Reizenstein's] current [Global Assessment of Functioning score] [of 60] is now free of contributions from alcohol and drug abuse and reflects only the ongoing sequelae of the [post-traumatic stress disorder], which in his case is primarily social impairment. . . . Occupationally he is not impaired at all and in fact has held his current job for the last 16 years and maintains that he likes it and functions well at it. The social impairment is his tendency to remain withdrawn and really socialize primarily with other veterans. He tends to shop at night to avoid people and has had difficulty maintaining long term relationships given his past three divorces. . . . .
>
> Given the fortuitous coincidence that I had seen Mr. Reizenstein for Social Service [seven-and-a-half] years ago, it became evident on evaluating him on this occasion that he is slowly improving. Certainly much of this is due to getting a handle on his substance abuse problems. The symptomatology of [post-traumatic stress disorder] is now less intense and he has been able to get rid of war-related material that he had

felt a need to expose himself to, and has stopped going out of his home armed since he does not feel as threatened during the day.

R. at 350.

In December 2004, and again in July 2005, the regional office issued Supplemental Statements of the Case denying entitlement to an initial disability rating in excess of 30%. R. at 356-66, 400-02. Mr. Reizenstein appealed to the Board.

In March 2006, the Board issued the decision on appeal in which it denied entitlement to an initial disability rating in excess of 30%; granted a 50% disability rating from December 2, 1996, to March 21, 1998; granted a temporary total disability rating from March 22, 1998, to May 5, 1999; and denied a disability rating in excess of 30% from May 6, 1999. R. at 1-17. The Board granted the temporary total disability rating because "when [Mr. Reizenstein] was admitted to the hospital [in March 1998], it appears that [his] [Global Assessment of Functioning score] became more severe." R. at 15. Further, the Board stated:

> Though the attendant treatment record does not indicate a discharge diagnosis of [post-traumatic stress disorder] and instead renders a primary diagnosis of alcohol dependence, it is noted that the May 2004 examination report did not exclude the possibility that the [Global Assessment of Functioning score] of 31 [in the hospital discharge report] was in part due to [his] [post-traumatic stress disorder] symptomatology.

*Id.* The Board therefore resolved any doubt in Mr. Reizenstein's favor and granted a temporary total disability rating from March 22, 1998. *Id.* The Board next relied on a May 6, 1999, VA treatment note to find that, as of that date, "the severity of symptomatology had abated." *Id.* Based on that treatment note and records from that time forward, the Board determined that Mr. Reizenstein was only entitled to a 30% disability rating from that date. R. at 15-17.

On appeal, Mr. Reizenstein argues that the Board provided an inadequate statement of reasons or bases for its assignment of disability ratings less than 100%, and for its assignment of an effective date of March 22, 1998, for the 100% disability rating. Appellant's Brief (Br.) at 6. Further, he argues that the Board reduced his temporary total disability rating without complying with the requirements of 38 C.F.R. § 3.343(a) and failed to provide an adequate statement of reasons or bases for this reduction. Appellant's Br. at 16. Mr. Reizenstein argues that the Court should grant

him a 100% disability rating from May 6, 1999, because there was no lawful basis for the Board to reduce the total disability rating without prior compliance with the requirements of § 3.343(a). Appellant's Br. at 28.

In his brief, the Secretary states that Mr. Reizenstein's claim should be remanded because the Board provided an inadequate statement of reasons or bases, in that it failed to address the applicability of § 3.343(a). Secretary's Br. at 6. He argues that remand, rather than reversal, is the appropriate remedy because reversal is only appropriate in a case of clear error, not, as here, where the Board has failed to address all potentially applicable laws. Secretary's Br. at 7. At oral argument, however, the Secretary clarified his position and argued that § 3.343(a) was not applicable in the context of staged ratings.

On May 27, 2008, after oral argument, the Court issued an order requesting a memorandum of law from the Secretary regarding the regulatory history of § 3.343 and the Secretary's usual practice in applying that regulation. The Secretary submitted a memorandum arguing that the regulatory history demonstrates that § 3.343(a) was not intended to be applied to staged ratings and that it was meant only to protect ratings that were already in effect from reduction without evidence that the condition had improved. Secretary's Supplemental (Supp.) Memorandum (Mem.) at 1-5. The Secretary contends that a temporary total disability rating like that at issue here is not "in effect" for the purposes of § 3.343(a) because "the concept of a staged rating necessitates that some incremental time periods are rated as less than total based on the evidence of record." Secretary's Supp. Mem. at 5. The Secretary also asserts that it is the practice of VA to provide examinations where a total rating has been in effect for a period of time and a reduction in rating is contemplated, but that § 3.343(a) has not been applied in the context of staged ratings. Secretary's Supp. Mem. at 5-6. He argues that this practice is appropriate because § 3.343(a) is prospective in nature, whereas staged ratings are retrospective, requiring the rating body to review evidence already of record to determine the appropriate levels and durations of particular disability ratings. Secretary's Supp. Mem. at 6. In support of this position, the Secretary has submitted a statement from Bradley Flohr, Assistant Director of Policy for the Compensation and Pension Service. *See* Secretary's Supp. Mem. Exhibit (Exh.) 3.

In response, Mr. Reizenstein contends that the Secretary has not addressed the issue of regulatory history raised by the Court in its May 27, 2008, order, because there is no regulatory history regarding the applicability of § 3.343(a) to staged ratings. Specifically, Mr. Reizenstein argues that staged ratings have only existed since this Court's decision in *Fenderson v. West*, 12 Vet.App. 119 (1999), and that VA has not taken any action in response to that decision. Appellant's Supp. Mem. at 1-2. Therefore, Mr. Reizenstein asserts, the responsibility for interpreting § 3.343(a) as it applies to staged ratings lies squarely with the Court. Appellant's Supp. Mem. at 2. Mr. Reizenstein also argues that Mr. Flohr's two-paragraph statement regarding VA's practice in applying § 3.343(a) "raises more questions than it answers," and "invades the province of this Court," because the matter is purely a question of law. Appellant's Supp. Mem. at 5.

## II. ANALYSIS

### A. Applicability of 38 C.F.R. § 3.343(a) to Staged Ratings

When a claimant is awarded service connection and assigned an initial disability rating, separate disability ratings may be assigned for separate periods of time in accordance with the facts found. Such separate disability ratings are known as staged ratings. *See Fenderson*, 12 Vet.App. at 126 (noting that staged ratings are assigned at the time an initial disability rating is assigned). Section 3.343(a) of Title 38, Code of Federal Regulations, provides: "Total disability ratings, when warranted by the severity of the condition and not granted purely because of hospital, surgical, or home treatment, or individual unemployability[,] will not be reduced, in the absence of clear error, without examination showing material improvement in physical or mental condition." The Court is asked to determine whether § 3.343(a) applies to staged ratings. This is a question of law that the Court considers de novo. *See* 38 U.S.C. § 7261(a)(1); *see also Smith v. Gober*, 14 Vet.App. 227, 230 (2000).

Although Mr. Reizenstein is correct that staged ratings have only been in existence since the Court's 1999 decision in *Fenderson*, some version of what became § 3.343(a) has been in existence since 1934. *Compare* Veteran's Regulation No. 3(a), Instr. 3, Para. 5 (Mar. 27, 1934) *with* 38 C.F.R. § 3.343 (1961) *and* 38 C.F.R. § 3.343(a) (2008). From that lengthy history, the Court is able to

discern the purpose behind § 3.343(a) and determine if that purpose is furthered by the application of that regulation to staged ratings.

The regulatory history provided by the Secretary indicates that Congress's purpose in enacting the Independent Offices Appropriation Act of 1935, which gave rise to Instruction Number 3 and Paragraph 5 thereof, was to restore veterans' disability ratings that had been severed under prior legislation. *See* Pub. L. No. 73-141, Title III, §§ 26 *et seq*. (1934) ("Where service connection . . . was . . . established . . . and such connection has been severed through the application of, or regulations or instructions promulgated under Public Law Number 2, Seventy-third Congress, service connection is hereby reestablished."); *see also* VA Gen. Coun. Prec. 3-2003, § 6 (July 16, 2003) ("Public Law 73-141 . . . provided for restoration of service-connected disability awards that had been severed under prior statutes."). Instruction 3, Paragraph 5 of Veterans Regulation Number 3 provided, in pertinent part:

> 5. Continuance of total disability ratings heretofore made.
> Total disability ratings made pursuant to the criteria established under the prior general and service pension laws, the War Risk Insurance Act, as amended, or the World War Veterans Act, 1924, as amended, for pension or disability compensation purposes, when warranted by the severity of the condition, and not granted purely because of hospitalization or home treatment, . . . will not be reduced, in the absence of clear error, without physical examination showing material improvement in physical condition.

(Mar. 27, 1934).

The Court agrees with the Secretary that the caption and text of this Instruction, which eventually became § 3.343(a), suggest that it applied only to ratings already in effect. "Heretofore" means "up until now; until the present; before this" (WEBSTER'S NEW WORLD DICTIONARY 631 (3d ed. 1988)), a definition that suggests that the Instruction was relevant only to ratings that had previously been made and that VA was contemplating reducing *prospectively*. Further, that the Instruction applied to ratings assigned under "prior general and service pension laws" leads to the conclusion that it was applicable to ratings that had been established at some earlier time. Taken as a whole, the plain language of the Instruction demonstrates that it was intended to protect veterans who had come to rely on disability ratings, and the compensation attached thereto, already in effect from arbitrary reductions in those ratings without evidence that their condition had improved. That

7

the text of § 3.343(a) is, with some small changes, essentially the same as Instruction 3, Paragraph 5, leads to the conclusion that the regulation is intended to serve the same purpose today as the Instruction did in 1934.[3]

Having determined the purpose behind § 3.343(a), the Court must now consider whether that purpose is furthered by the application of the regulation to staged ratings. As noted above, staged ratings are a series of separate ratings applied *in the first instance* for separate periods of time, based on all the evidence of record. *See Fenderson*, 12 Vet.App. at 126. By their very nature, staged ratings are retrospective, meant to properly compensate a claimant for periods of time when his condition was more or less severe than it is at the time the rating decision is actually made. *See O'Connell v. Nicholson*, 21 Vet.App. 89, 93 (2007) ("Because the claims process before the agency can be lengthy, and because the level of a veteran's disability may fluctuate over time, staged ratings are a sensible mechanism for allowing the assignment of the most precise disability rating–one that accounts for the possible dynamic nature of a disability while the claim works its way through the adjudication process.").

Here, the Board sought to ensure that Mr. Reizenstein was properly compensated for the varying severity of his condition *during the pendency of his appeal of his initial disability rating* by undertaking a complete review of the evidence to determine the appropriate disability ratings and the correct effective periods for those ratings. At the time of the Board's March 2006 decision, Mr. Reizenstein was in receipt of only a 30% disability rating for post-traumatic stress disorder. The

---

[3] The Court notes that the Instruction became [Rating and Pension Regulation] 1170 in January 1936, and then became VA Regulation 1170(A) in April 1955. *See* Secretary's Supp. Mem. Exh. 2. That regulation was codified in the Code of Federal Regulations in February 1961, with removal of the portion of the text that read "made pursuant to the criteria established under the prior general and service pension laws, the War Risk Insurance Act, as amended, or the World War Veterans Act, 1924, as amended, for pension or disability compensation purposes." The relevant language of the regulation has remained unchanged since 1961, however, and the current version of § 3.343 reads, in pertinent part:

§ 3.343 Continuance of total disability ratings.

(a) General. Total disability ratings, when warranted by the severity of the condition and not granted purely because of hospital, surgical, or home treatment, or individual unemployability will not be reduced, in the absence of clear error, without examination showing material improvement in physical or mental condition.

38 C.F.R. § 3.343(a) (2008).

Board's decision entitled him to *"back pay"* for the periods during which the Board determined that a 50% disability rating and a temporary total disability rating were warranted. His was not a situation in which he was in receipt of a particular level of compensation for a period of time and the Board's decision abruptly reduced the amount of compensation he was receiving without warning or evidence that his condition had improved. In short, Mr. Reizenstein is not a member of the class of veterans that Congress and VA sought to protect with § 3.343(a) because he had not relied for any period of time on the compensation provided by the temporary total disability rating.

In *O'Connell*, the Court was asked to determine whether 38 C.F.R. § 3.105(e), which pertains to the notification VA must provide to a veteran regarding a proposed reduction in disability rating, applied in the context of staged ratings. The Court's reasoning for finding that it did not is equally persuasive in this case:

> [The appellant] would have us compel VA to first assign the higher disability rating and then halt adjudication in order to issue a proposed reduction and provide the veteran with 60 days in which to submit additional evidence. Because . . . such procedure would not further the underlying purpose of [the regulation at issue], we refuse to compel it in the situation at hand.

*O'Connell*, 21 Vet.App. at 93. The Court explained that the purpose underlying § 3.105(e) was to ensure that veterans in receipt of a particular disability rating "would be notified *in advance* that their benefits would be diminished, thus enabling them to (1) *adjust to the diminished expectation* and (2) submit evidence to contest the reduction." *Id.* (emphasis added). As discussed above, the Court has determined that § 3.343(a) serves a similar purpose: to prevent the arbitrary reduction of compensation paid to veterans who have come to rely on a particular level of benefits. Requiring VA to "halt adjudication" after assigning a temporary total disability rating as part of a staged rating to obtain a new medical examination would discourage the use by VA of staged ratings that include a period of temporary total disability and would often result in compensation being paid to a claimant at a higher level than he might otherwise be entitled to for a period of time.[4]

---

[4] For example, Mr. Reizenstein would have the Court reinstate his temporary total disability rating from May 6, 1999, and order the Board to provide a medical examination to determine the *current* level of impairment caused by his post-traumatic stress disorder. However, it appears likely, based upon the May 2004 medical examination, that Mr. Reizenstein is no longer totally disabled by his condition. If the Court were to grant the relief he seeks, it is possible that he would be overcompensated at a 100% rating for as many as 9 years.

Because staged ratings, such as those the Board assigned in this case, are retrospective in nature, and because § 3.343(a) is a regulation that contemplates prospective action, applying § 3.343 to staged ratings "would be imposing unnecessary procedure in a situation where such procedure is unwarranted." *Id.* Accordingly, the Court holds that § 3.343(a) is not applicable to staged ratings.

### B. Reasons or Bases

Mr. Reizenstein's remaining arguments pertain to the Board's statement of reasons or bases for its decision. He argues that the Board did not adequately explain its reasons for denying entitlement to (1) an initial disability rating in excess of 30% for the period of November 7, 1996, to December 1, 1996; (2) a disability rating in excess of 50% for the period of December 2, 1996, to March 21, 1998; (3) a disability rating in excess of 30% for the period beginning May 6, 1999; and (4) an effective date earlier than March 22, 1998, for a temporary total disability rating. The Court disagrees.

In rendering its decision, the Board is required to provide a written statement of the reasons or bases for its "findings and conclusions[] on all material issues of fact and law presented on the record." 38 U.S.C. § 7104(d)(1). The statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995). The Board may commit remandable error when it fails to provide an adequate statement of its reasons or bases. *See Gilbert*, 1 Vet.App. at 57.

The Board thoroughly outlined the rating schedule for post-traumatic stress disorder and recounted the evidence of record. With respect to the initial disability rating of 30%, assigned for the period of November 7, 1996, to December 1, 1996, the Board determined that the evidence did not support a finding of "considerable" industrial impairment *as a result of post-traumatic stress disorder symptomatology*, finding that the treatment records mainly concerned difficulties due to "his participation in a criminal trial, pressures at work, and a recent breakup with a girlfriend." R. at 14. Accordingly, the Board found that he was not entitled to a disability rating in excess of 30% based

on "manifestations of [post-traumatic stress disorder]." *Id.* This statement demonstrates that the Board found that Mr. Reizenstien's symptoms of *post-traumatic stress disorder* were not severe enough during this time period to warrant a higher disability rating for that condition. This distinction is further demonstrated by the Board's determination that the evidence concerning the time period between December 2, 1996, and March 22, 1998, warranted a higher disability rating because Mr. Reizenstein had "complained of symptomatology related to [post-traumatic stress disorder]." *Id.*

Regarding the 50% disability rating assigned for this period, the Board determined that there was no evidence that Mr. Reizenstein had "illogical, obscure and irrelevant speech, unprovoked irritability with periods of violence, or spatial disorientation," as required to substantiate a disability rating of 70%. R. at 15; *see also* 38 C.F.R. § 4.130, Diagnostic Code (DC) 9411. The Board relied on three medical examinations that found he did not have thoughts of suicide, was appropriately groomed, and did not engage in "obsessional rituals that interfered with daily routine activities." R. at 15. In addition, the Board found that Mr. Reizenstein's employment status had "returned to the status quo." *Id.*. The Board therefore found that a disability rating in excess of 50% was not warranted.

As of May 6, 1999, the Board determined that Mr. Reizenstein was not entitled to a disability rating in excess of 30%. The Board found that the severity of his post-traumatic stress disorder symptomatology had abated, in that various treatment records indicated that he did not have suicidal or homicidal ideation; he was generally well-groomed; he did not evidence any impaired judgment or memory problems; he did not have circumstantial, circumlocutory, or stereotyped speech, nor impaired abstract thinking, all of which are symptoms that could warrant a disability rating higher than 30%. R. at 15-16; *see* 38 C.F.R. § 4.130, DC 9411. The Board relied heavily on the May 2004 examination because it was conducted by the same examiner who had conducted a December 1996 examination, and found it "particularly helpful" in assigning staged ratings. R. at 16. The Board noted that the May 2004 examiner found no occupational impairment and less intense symptomatology overall. *Id.* The Board also noted that the examiner stated that Mr. Reizenstein's impairment as a result of post-traumatic stress disorder tended to be social impairment, but that he was in a relationship at the time of the exam and that he had been able to successfully maintain work

relationships. *Id.* The Board concluded that the evidence did not illustrate that Mr. Reizenstein's manifestations of post-traumatic stress disorder fit the symptomatology provided in the rating schedule for a 50% disability rating and therefore denied a rating in excess of 30% from May 6, 1999. R. at 17.

In light of this discussion, the Court concludes that the Board's statement of reasons or bases for its determinations that Mr. Reizenstein was not entitled to an initial disability rating in excess of 30% for the period of November 7, 1996, to December 1, 1996, nor to a disability rating in excess of 50% for the period of December 2, 1996, to March 21, 1998, nor to a disability rating in excess of 30% for the period beginning May 6, 1999, is adequate. *See Gilbert*, 1 Vet.App. at 57.

The Court finds Mr. Reizenstein's argument with respect to the effective date of his temporary total disability rating to be unpersuasive. He contends that the evidence on which the Board relied in granting a temporary total disability rating as of March 22, 1998, correctly supports an effective date for that rating of March 22, *1997*. He bases his argument on the March 1998 hospital discharge report that states that his Global Assessment of Functioning score was "currently 31, highest is 41." R. at 134. He argues that this statement indicates that his highest score in the past year was 41, which warrants a 100% disability rating effective one year earlier than the date of his admission to the hospital. However, the plain reading of that statement does not support his argument. Further, as the Board explained in its decision, it based its assignment of a temporary total disability rating on Mr. Reizenstein's admission to the hospital on March 22, 1998, for alcohol detoxification, and noted that it was then that his Global Assessment of Functioning score had become "more severe." R. at 15. The Board noted that the hospital discharge reported revealed a primary diagnosis of alcohol dependence, but gave Mr. Reizenstein the benefit of the doubt, based on the May 2004 examination, that his score of 31 at the time of his hospitalization was related to his post-traumatic stress disorder. *Id.* The Court concludes that the Board provided adequate reasons or bases for assigning March 22, 1998, as the effective date for a temporary total disability rating. *See Gilbert*, 1 Vet.App. at 57. Accordingly, the Court will affirm the March 2006 Board decision.

12

## III.  CONCLUSION

In consideration of the foregoing, the March 7, 2006, Board decision is AFFIRMED.