# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-5980

WILLIS E. BRELAND, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 28, 2020                                      Decided May 29, 2020)

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Alex L. Kutrolli* and *Shannon E. Leahy*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; *James B. Cowden*, Deputy Chief Counsel; and *Mark J. Villapando*, were on the brief, all of Washington, D.C., for the appellee.

Before GREENBERG, TOTH, and FALVEY, *Judges*.

FALVEY, *Judge*, filed the opinion of the Court. GREENBERG, *Judge*, filed an opinion concurring in part and dissenting in part.

FALVEY, *Judge*: Army veteran Willis E. Breland appeals through counsel a June 27, 2018, Board of Veterans' Appeals decision denying a compensable initial rating for service-connected squamous cell carcinoma of the tongue (tongue cancer) from August 1, 2007, to January 16, 2008, and from September 1, 2008, to present. Record (R.) at 4-14 (the veteran had 100% ratings for tongue cancer from December 26, 2006, to August 1, 2007, and from January 16, 2008, to September 1, 2008).[1]

This appeal, over which the Court has jurisdiction under 38 U.S.C. §§ 7252(a) and 7266(a), was referred to a panel of the Court to address whether the note to 38 C.F.R. § 4.114, Diagnostic

---

[1] The Board granted an August 1, 2007, effective date for diffuse interstitial fibrosis, cervical strain, dysphagia, and hypothyroidism. These are favorable findings that the Court may not disturb. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007). Moreover, the veteran raises no argument as to these matters, so any appeal as to them is dismissed. *See Pederson v. McDonald*, 27 Vet.App. 276, 283 (2015) (en banc). The Board also remanded a claim for an initial rating in excess of 30% for post-traumatic stress disorder. Because a remand is not a final decision of the Board subject to judicial review, the Court lacks jurisdiction to consider this matter. *See Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000); *Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam order); 38 C.F.R. § 20.1100(b) (2019).

Code (DC) 7343, which mandates a VA medical examination 6 months after cancer therapy ceases, requires VA to continue a 100% rating until such time as it gets a medical examination, even when awarding service connection retroactively, long after the 6-month period has passed. We hold that it does not.

Instead, we hold that the procedures in the note to DC 7343—i.e., an examination 6 months after cessation of treatment and contemporaneous notice of any reduction—are prospective. Thus, when VA retroactively awards service connection and disability ratings for malignant neoplasms of the digestive system, these procedures are not strictly applicable and VA's inability to apply them does not require the indefinite continuation of a 100% rating. Therefore, the Board did not misapply the note to DC 7343 and did not err in denying a 100% tongue cancer rating for the listed periods. What's more, because the record contained sufficient evidence for VA to determine a clear picture of Mr. Breland's health and assign proper ratings and effective dates, we will affirm the portion of the June 2018 Board decision denying a compensable tongue cancer rating from August 1, 2007, to January 16, 2008, and from September 1, 2008, to present.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Breland served on active duty from November 1965 to November 1968, with service in Vietnam. R. at 2120. In December 2006, he filed a claim for service connection for tongue cancer. R. at 2019. He completed chemotherapy and radiation therapy in 2007. *See* R. at 1280. Then in December 2007, the regional office (RO) denied his claim because tongue cancer was not one of the recognized disabilities resulting from herbicide exposure in Vietnam. R. at 1764-65.

Soon, however, Mr. Breland's tongue cancer returned, as a January 2008 private medical record again noted a diagnosis of tongue cancer. R. at 1284. He had surgery for this bout of cancer in February 2008, R. at 1280, and a July 2008 private medical record revealed no evidence of malignancy, R. at 1209. Mr. Breland then continued with his VA claim.

In December 2008, he filed his Notice of Disagreement (NOD) with the RO decision. R. at 1784. In May 2010, a VA examiner noted no recurrence of the veteran's tongue cancer and concluded that that condition was less likely related to herbicide exposure. R. at 1698. In August 2010, the RO continued to deny service connection for tongue cancer. R. at 1666. Soon after, Mr. Breland perfected his appeal. R. at 1608.

This is where things get murky. Neither party laid out the facts for us in their briefs and the record does not contain documents covering this period. However, we know that, in September 2015, the RO granted service connection for tongue cancer after Mr. Breland submitted a medical opinion tying his cancer to herbicide exposure. R. at 1431. The RO also noted that a January 17, 2007, medical record reflected that the veteran was "about 10 days out from radiation therapy." *Id.* The RO assigned a 100% tongue cancer rating from December 26, 2006, to August 1, 2007 (active malignancy and treatment period) and a noncompensable rating from August 1, 2007 (inactive disease), stating that higher ratings might be warranted based on residuals. *Id.*

In August 2016, Mr. Breland filed an NOD as to the noncompensable rating from August 1, 2007, asserting that, because of his tongue cancer treatment, he experienced several residuals. R. at 1325-36. In September 2017, the veteran underwent a VA examination regarding the residuals. R. at 609-26. In November 2017, the RO granted service connection for these residuals, assigning a 60% interstitial fibrosis rating, a 10% cervical strain rating, and noncompensable dysphagia and hyperthyroidism ratings, all effective May 15, 2017 (the date of receipt of the veteran's supplemental claim for compensation). R. at 371-72.

In February 2018, the RO determined that the proper effective date for cervical strain, dysphagia, and hyperthyroidism was August 5, 2016 (the date of the veteran's NOD, in which he reasonably raised those disabilities). R. at 202-06 (the decision did not address fibrosis). The RO also determined that a 100% tongue cancer rating was warranted from January 16, 2008, the date of the second active cancer diagnosis, to September 1, 2008, 6 months after treatment for that bout of cancer was completed. *Id.*

In March 2018, Mr. Breland appealed that decision, arguing that VA failed to correctly apply 38 C.F.R. § 4.114, DC 7343, the regulation under which his tongue cancer was rated. R. at 111-14. A portion of that regulation's note provides that "[s]ix months after discontinuance of such [cancer] treatment, the appropriate disability rating shall be determined by mandatory VA examination." § 4.114, DC 7343 (2019). Mr. Breland focused his argument on this portion of the note. He asserted that VA assigned the wrong rating because the rating was not supported by such a mandatory VA examination. R. at 114.

In the decision on appeal, the Board rejected Mr. Breland's argument. It recognized that DC 7343 mandates a VA examination to determine the extent and severity of cancer residuals after treatment. R. at 8. But, the Board determined that VA examinations could not have been conducted

3

at the end of the 6-month periods following the cessation of Mr. Breland's treatment because the 100% tongue cancer ratings were assigned retroactively. R. at 8-9. The Board also explained that, as much as the veteran felt that he was entitled to a 100% rating from the date of service connection to present, this was not the intent of the regulation. R. at 9. Instead, the regulation instructed that, if there was no recurrence, the condition is to be rated on its residuals. *Id*. The Board thus denied an initial compensable rating for tongue cancer from August 1, 2007, to January 16, 2008, and from September 1, 2008, to present. *Id*.

Even so, the Board did award earlier effective dates for diffuse interstitial fibrosis, cervical strain, dysphagia, and hypothyroidism. Rather than the August 5, 2016, date assigned by the RO,[2] the Board concluded that an August 1, 2007, effective date was appropriate because medical evidence established that Mr. Breland suffered from these residual conditions from August 1, 2007 (the date of cessation of the first 100% tongue cancer rating). R. at 10.[3]

## II. PARTIES' ARGUMENTS

Under § 4.114, DC 7343, a 100% rating is warranted for "[m]alignant neoplasms of the digestive system, exclusive of skin growths." The note to this regulation tells us that:

> A rating of 100 percent shall continue beyond the cessation of any surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure. Six months after discontinuance of such treatment, the appropriate disability rating shall be determined by mandatory VA examination. Any change in evaluation based upon that or any subsequent examination shall be subject to the provisions of § 3.105(e) of this chapter. If there has been no local recurrence or metastasis, rate on residuals.

Mr. Breland argues that, based on the plain meaning of the note to DC 7343, he has a right to retain the 100% tongue cancer rating from the date of his claim until VA gave him the noted

---

[2] The Court notes that VA does not appear to have assigned an August 5, 2016, effective date for fibrosis. Instead, the May 15, 2017, effective date seems to have remained for that condition following the November 2017 and February 2018 RO decisions.

[3] On April 28, 2020, Mr. Breland filed a *Solze v. Shinseki*, 26 Vet.App. 299, 301 (2013), notice. He attached a March 2020 RO decision, which implemented the portion of the June 2018 Board decision granting an August 1, 2007, effective date for diffuse interstitial fibrosis and assigned a 60% rating from that date. The accompanying code sheet reflected that Mr. Breland's combined disability ratings (for the noncompensable tongue cancer periods) were thus as follows: 80% from August 2007 to January 2008; 80% from September 2008 to September 2017; and 100% from September 2017. Still, the March 2020 RO decision noted an August 5, 2016, effective date for the 10% cervical spine, noncompensable dysphagia, and noncompensable hyperthyroidism ratings, although the June 2018 Board decision also granted an August 1, 2007, effective date for these conditions. In his April 30, 2020, response to the *Solze* notice, the Secretary averred that, on that same date, he contacted two ROs to inform them of this.

4

mandatory VA examination. Appellant's Brief (Br.) at 4-7; Appellant's Reply Br. at 2-5. Here, this would mean a 100% rating for roughly a decade. Mr. Breland readily acknowledges the Board's finding that, because the 100% tongue cancer ratings were assigned retroactively, administration of a VA examination at the end of the 6-month periods following cessation of treatment was impossible. But he argues that the Board's reasoning is at odds with the note's clear instructions. He therefore asks the Court to reverse the denial of a 100% rating from August 1, 2007, to January 16, 2008, and from September 1, 2008, to October 1, 2017. Appellant's Br. at 8; Appellant's Reply Br. at 11.

On the other hand, the Secretary urges the Court to affirm the Board decision. He cites *Tatum v. Shinseki*, 24 Vet.App. 139 (2010), and *Reizenstein v. Peake*, 22 Vet.App. 202 (2008), *aff'd sub nom. Reizenstein v. Shinseki*, 583 F.3d 1331 (Fed. Cir. 2009), as analogous to the issue here. In *Tatum*, the Court reviewed 38 C.F.R. § 4.115b, DC 7528 (malignant neoplasms of the genitourinary system), and found that the notice requirement referenced in it was inapplicable to the assignment of staged ratings. 24 Vet. App. at 142-144. And in *Reizenstein*, the Court determined that 38 C.F.R. § 3.343(a), which requires that VA conduct an examination before reducing a total disability rating, contemplates prospective action and was thus not applicable to staged ratings, which are retrospective. 22 Vet.App. at 209. The Court stated that such an application "would be imposing unnecessary procedure in a situation where such procedure is unwarranted." *Id.*

Mr. Breland counters that DC 7343 only has a 100% rating, and so it is impossible for the Board to assign a staged rating. Appellant's Reply Br. at 7-8 (asserting that his "appeal concerns the assignment of a noncompensable rating when the only rating available for his service connected disability. . . under [] DC 7343 is a 100% rating. There is no noncompensable rating available for assignment by VA."). He also contends that any rating for a residual condition is separate from the tongue cancer rating and therefore does not constitute a staged rating. *Id.* He thus argues that, under the correct interpretation of DC 7343, he had a right to retain the 100% rating until VA obtained the mandated examination and determined the separate disability ratings for any residuals. *Id.* at 8. Finally, Mr. Breland asserts that the Secretary's discussion of a rating reduction is wrong because the note "says nothing whatsoever about 'reduction'" and instead instructs that a 100% rating will continue after cessation of treatment until the Secretary obtains an examination to determine the appropriate disability ratings for any residuals. *Id.* at 8-10.

5

### III. ANALYSIS

#### A. The Text of the Regulation

First, we will address the text of the note to DC 7343. After all, that is the starting point of any regulatory interpretation. *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993). In so doing, if no uncertainty exists, the "regulation then just means what it means—and the court must give it effect." *Kisor v. Wilkie,* 139 S. Ct. 2400, 2415 (2019); *see also id*. at 2419 (courts "must apply all traditional methods of interpretation to any rule, and must enforce the plain meaning those methods uncover"). If the plain meaning of the regulation is clear from its language, then that meaning controls and "that is 'the end of the matter.'" *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)). We now turn our attention to the regulation.

The first sentence of the regulation's note tells us that "[a] rating of 100 percent shall continue beyond the cessation of any [treatment]." § 4.114, DC 7343, Note. Thus, it makes clear at the inception that it is discussing a situation when the veteran is already receiving a 100% rating for service-connected cancer. Otherwise, there would be no 100% rating to "continue." This also clues us in on the prospective nature of the regulation.

The second sentence then tells us that "[s]ix months after discontinuance of such treatment, the appropriate disability rating shall be determined by mandatory VA examination." § 4.114, DC 7343, Note. Again, we read this to be prospective. It, in conjunction with the first sentence, refers to a veteran who was service connected for cancer while he either actively had that cancer, was undergoing treatment for that cancer, or was in the six-month convalescence period after treatment for that cancer. After all, it would be impossible for VA to conduct an examination six-month after cessation of treatment if that were not the case. *See* R. at 8-9 (the Board determined that VA examinations could not have been conducted at the end of the 6-month periods following the cessation of Mr. Breland's treatment because the tongue cancer ratings were assigned retroactively).

What's more, VA would have no obligation to conduct such an examination unless the cancer was already service connected, given that VA does not examine veterans for rating purposes unless they are first service connected. When a condition is not service connected, VA never reaches the downstream question of compensation. *See Grantham v. Brown*, 114 F.3d 1156, 1158 (Fed. Cir. 1997). Mr. Breland overlooks this point. Adopting his position would have us ignore the

6

fact that, because he was not yet service connected for cancer either when he had active cancer, when he was undergoing treatment, or shortly after cessation of that treatment, VA would have had no need to conduct an examination looking for recurrence, metastasis, or residuals at that time. We would also have to ignore that the examination is meant to take place 6 months after the cessation of treatment.

The regulation's third sentence provides: "Any change in evaluation based upon that or any subsequent examination shall be subject to the provisions of [38 C.F.R.] § 3.105(e)." § 4.114, DC 7343, Note. Here again, we deal with forward-looking actions. The procedures for a reduction come only after the veteran has already been service connected and rated; otherwise, there would be no "change in evaluation" or a need to reference § 3.105(e) (notice requirements for reducing an evaluation of a service-connected disability) because there would be nothing to reduce. Thus, if, as here, VA is deciding the rating retrospectively, there is no proposed rating change.

Therefore, contrary to Mr. Breland's contentions, the plain meaning of DC 7343's note is not that, where service connection and ratings for tongue cancer are retroactively assigned years after the cancer has been eradicated and treatment has ceased, a 100% rating will continue until the date that a VA examination regarding residuals is conducted. This would lead to compensation based on pure regulatory presumption and unmoored from any medical reality. Consider Mr. Breland's situation. He would receive a 100% rating for active cancer for almost a decade, when cancer was not present during that period. We have already rejected such a result in similar circumstances. *See Rossiello v. Principi*, 3 Vet.App. 430, 433 (1992) (the 100% rating cannot continue past the 6-month period following cessation of treatment because "the basis for the 100% rating, in the absence of 'local recurrence or metastases,' no longer exists," quoting 38 C.F.R. § 4.97, DC 6819, Note (1991)).

In addition, the history and purpose of the regulation reinforces our reading of the note. *See Kisor*, 139 S. Ct. at 2415 (before concluding that a rule is ambiguous, a court must exhaust all the traditional tools of construction and, to make that effort, must carefully consider the text, structure, history, and purpose of a regulation). Taking a step back to when VA proposed to amend DC 7343's note to its current form, we find support for reading the note as covering prospective conduct only.

The note previously provided that the 100% rating would continue for 1 year following cessation of treatment. In its *Federal Register* notice, VA explained that the reason behind the

examination requirement at 6 months after cessation of treatment was to ensure that the evaluation reflected actual medical findings, rather than a regulatory presumption. 65 Fed. Reg. 48,205, 48,206 (2000). Mr. Breland's reading would not only lead to the exact opposite, it would also effectively extend the presumptive period far beyond its original pre-amendment contours. In other words, no matter what the medical evidence showed, he would like to keep the 100% rating for nearly a decade, during which time he did not have active cancer and was not receiving treatment. This would eviscerate the purpose behind the examination. Which, again, is to prospectively obtain data VA can use when assigning a rating; i.e., either for continuing the 100% rating because cancer has recurred or metastasized, or for residuals.

Besides the forward-looking purpose of the examination, VA also laid out the prospective nature of the reduction cross-reference. VA explained that, if the results of the examination warranted a reduction in evaluation, the reduction would be implemented under § 3.105(e). This would give the veteran contemporaneous notice of any proposed action. 65 Fed. Reg. 48,206. This too indicates that the regulation note is prospective as it describes the procedures for evaluating a veteran with a current 100% rating for service-connected cancer after treatment ends. If this were not the case, it would be unnecessary to discuss (1) the reduction of an evaluation, as there would be no evaluation to reduce; and (2) contemporaneous notice for a veteran relying on that evaluation already in effect.

We also find instructive the *Federal Register* notice discussing a similar amendment to an analogous regulation: 38 C.F.R. § 4.97, DC 6819 (malignant neoplasm of the respiratory system). The previous note for DC 6819 provided a 2-year period for the 100% rating and lacked the provision referencing § 3.105(e). The amendment, which became effective October 1996, changed the note to the current version, *see* 61 Fed. Reg. 46,720, 46,721 (1996), which is nearly identical to DC 7343's note.

In the *Federal Register* notice, VA noted that one commenter believed that applying § 3.105(e) would cause administrative problems and significantly lengthen the period of a total evaluation when claims were received months or years after surgery—a situation like Mr. Breland's case. *See* 61 Fed. Reg. 46,721. The commenter stated that there would be an inconsistency where a 100% rating was retroactively assigned (i.e., where the veteran went from no disability compensation to 100%) and where, simultaneously, VA sprang into action to provide the process under § 3.105(e) (presumably, notice and a VA examination) for reduction of the 100%

8

rating. But, VA put this issue to rest. It explained that, because "§ 3.105(e) applies only to reductions in 'compensation payments currently being made,' it does not apply where a total evaluation is assigned and reduced retroactively." *Id*. This is the same conclusion that we reach today.

Thus, we find that, based on a plain reading of the note to DC 7343, this regulation contemplates prospective action and therefore, as we will discuss later, the prospective procedures contained in the DC are inapplicable when VA awards benefits retroactively.

### B. Staged Ratings

Our reading of the regulation dovetails with the Court's precedent for analogous and other staged ratings; namely, *Tatum*. But, Mr. Breland argues that his rating under DC 7343 could not be a staged rating. First, he asserts that this is because the only possible rating is 100%. But he ignores 38 C.F.R. § 4.31. Under this regulation, VA assigns a 0% rating when the requirements for a compensable rating are not met. *See* 38 C.F.R. § 4.31 (2019). That is just what VA did, R. at 1431-32, and is the correct result.

Once Mr. Breland reached the point where it had been 6 months after treatment had ceased and his cancer was inactive, he no longer met the requirements for a compensable rating. Thus, § 4.31 kicked-in and he received a noncompensable rating. With the 0% rating, Mr. Breland remains service connected for tongue cancer, meaning he does not have to reestablish service connection for that condition if it were to recur in the future. But he receives a noncompensable rating for the periods that the cancer is inactive and where there is no local recurrence or metastasis. Because Mr. Breland's argument that VA could not assign a noncompensable rating is incorrect, his first argument about why *Tatum* is inapplicable—i.e., because a staged rating is impossible where he could only be rated at 100%—fails.

Second, without any analysis or supporting authority, the veteran contends that residual ratings are "separate" ratings and thus not a staged rating. *See* Appellant's Reply Br. at 7. But, we addressed a similar issue in *Tatum* when we reviewed DC 7528, a code that is almost identical to DC 7343. DC 7528 provides a 100% rating for malignant neoplasms of the genitourinary system and includes a note instructing that, after treatment, "'the rating of 100[%] shall continue with a mandatory VA examination at the expiration of six months. Any change in evaluation based upon that or any subsequent examination shall be subject to the provisions of § 3.105(e)[]. If there has been no local reoccurrence or metastasis, rate on residuals[]'." *Tatum*, 24 Vet.App. at 142, quoting

38 C.F.R. § 4.115b, DC 7528, emphasis omitted. Mr. Tatum had a prostatectomy on October 29, 2001. *Id* at 140. On February 28, 2002, he filed a claim for service connection. *Id*. In September 2002, an RO granted a 100% rating for prostate cancer from February 28, 2002, to May 1, 2002 (around 6 months after his prostatectomy), and a noncompensable rating for prostate cancer residuals from May 1, 2002. *Id*. The Court expressly referred to this evaluation, assigned under DC 7528, as a staged rating, *id*. at 143 ("there is no dispute that Mr. Tatum was not receiving compensation at the time the staged rating was assigned"), noting that a staged rating is simply a "rating that looks backwards and retroactively assigns specific ratings to discrete periods," *id*. at 141 n.6 (citing *Reizenstein*, 583 F.3d at 1337). Mr. Breland fails to explain why the Court's understanding of staged ratings in *Tatum* should not apply here, *see Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (the Court will not entertain underdeveloped arguments), and thus his second argument is also unpersuasive.

Third, Mr. Breland argues that the note in DC 7343 presents a different circumstance than the circumstances for a staged rating because the note specifically provides that reductions are subject to § 3.105(e) and staged ratings are not. Oral Argument at 23:57-24:47, 44:15-45:38, *Breland v. Wilkie*, U.S. Vet. App. No. 18-5980 (oral argument held April 28, 2020); *see also id*. at 43:00-44:15 (asserting that *Tatum* did not refer to 3.105(e)). He also contends that *Tatum* was not focused on the issue presented here and thus the references the Secretary attempts to extrapolate are of no benefit. *Id*. at 43:00-44:15. We disagree.

In fact, we already rejected this line of attack in *Tatum*. There, the veteran sought to distinguish his case from the typical staged rating case addressed in *O'Connell v. Nicholson*, 21 Vet.App. 89 (2007), which involved an interpretation of § 3.105(e) on its own. *Tatum*, 24 Vet.App. at 144. Mr. Tatum argued that he was not bound by *O'Connell*'s interpretation of § 3.105(e) because his case concerned the interpretation of this regulation within the context of his DC—one that explicitly mandates a medical examination and notice before there is any change in evaluation. *Id*. But, we found this to be "a distinction without a difference." *Id*. Likewise, we also found that, although *O'Connell* did not involve a DC that mandated an examination, that too was "a distinction without a difference." *Id*. Instead, we found that "Mr. Tatum's contention that DC 7528 expressly contains a notice requirement is overstated. Rather than expressly requiring notice, DC 7528 requires compliance with § 3.105(e), and[] § 3.105(e) requires notice *only before there is a reduction in compensation*." *Id*. (emphasis added).

10

We do not see a reason to depart from *Tatum* when interpreting DC 7343, given that the Court there reviewed a DC note almost identical to DC 7343. Thus, we read DC 7343 to require the following when the rating is retroactively awarded: (1) VA may assign a noncompensable rating for malignant neoplasms when the cancer is inactive and treatment has ceased (i.e., the veteran remains service connected for that cancer)—this noncompensable period for the cancer itself will often coincide with the rating period for cancer residuals; (2) these retrospective discrete ratings are staged ratings; and (3) notice and a VA examination 6 months after cessation of treatment is only required where current compensation would be reduced, which is not what occurs when assigning a retroactive staged rating.

## C. Retroactive Assignment

In addition, our reading of DC 7343 dovetails with our precedent on retroactive ratings, such as *Reizenstein.* That case concerned § 3.343(a), which provides that "[t]otal disability ratings . . . will not be reduced . . . without examination showing material improvement in physical or mental condition." The Board had granted staged ratings, including a temporary total disability rating, and Mr. Reizenstein argued that the Board reduced the total disability rating without complying with the requirements of § 3.343(a). *Reizenstein*, 22 Vet.App. at 203, 205.

We held that § 3.343(a) contemplates prospective action and was thus inapplicable to staged ratings, which are retrospective. *Id*. at 209. We found that such an application "would be imposing unnecessary procedure in a situation where such procedure is unwarranted." *Id*. We also explained that the Board's decision entitled the veteran to back pay for the periods during which the Board determined that a rating higher than what he received was warranted and did not constitute a situation in which the Board abruptly reduced the amount of compensation he was receiving without evidence that his condition had improved. *Id*. at 208.

We recognize that § 3.343(a) and § 4.114, DC 7343, are under different parts of the C.F.R. (Adjudication and Schedule for Rating Disabilities, respectively). But, like in *Tatum*, this appears to be "a distinction without a difference," 24 Vet. App. at 144, particularly where both regulations concern 100% ratings, instruct that an examination be administered, and are prospective. As we explained in *Reizenstein,* § 3.343(a) contemplates prospective action and was intended to protect veterans who had come to rely on disability ratings already in effect. 22 Vet.App. at 209. Similarly, the language in DC 7343's note, as well as relevant *Federal Registers*, reflects that the regulation is also prospective and intended to protect veterans relying on current ratings.

11

Thus, Mr. Breland's assertion that the retroactive assignment of his rating "is of no moment," Appellant's Br. at 5, is incorrect. Because retroactivity is a relevant issue here, the Board was right to discuss it. It was also proper for the Board to consider the impossibility of an examination 6 months after cessation of the veteran's tongue cancer treatment. Put another way, we see no error in how these issues factored into the Board's consideration of whether the veteran was entitled to a 100% rating from the date of service connection. R. at 8-9. And so, we reject Mr. Breland's assertion that the Board's explanation was at odds with the regulation note.

We further hold that, like in *Reizenstein,* because the note to DC 7343 contemplates prospective action, the prospective procedures contained therein—an examination 6 months after cessation of treatment and contemporaneous notice of any proposed action based on that examination under § 3.105(e)—are inapplicable to retroactively awarded cancer benefits, where such an application would impose unnecessary procedure. *See Reizenstein,* 22 Vet.App. at 209. But, we note that DC 7343 must nevertheless be used to guide VA when it retroactively grants service connection and assigns ratings for malignant neoplasms of the digestive system. For example, although it may not be possible to conduct a VA examination 6 months after treatment ceases for a retrospective award, VA should, as it did in Mr. Breland's case, ascertain from the available record (1) if the cancer recurred or metastasized; (2) when treatment ended (so as to ensure that the effective date for the 100% rating extends for 6 months after the date that treatment was completed); and (3) if there are any residuals, when those began, and their severity.

### D. Other Evidence of Record

This brings us to our final point. VA must still have adequate evidence to rate a veteran's tongue cancer and any residuals. And when VA retroactively awards service connection and assigns ratings, those disability ratings and effective dates will be based on the evidence of record, so long as it contains the requisite information to make such determinations. *See Reizenstein*, 22 Vet.App. at 208-209 (the Board sought to ensure that the veteran was properly compensated for the varying severity of his condition during the pendency of his appeal by undertaking a complete review of the evidence to determine the appropriate disability ratings and the correct effective periods for those ratings); *Bennett v. Brown*, 10 Vet.App. 178, 183 (1997) (finding that any RO failure to schedule an examination following cessation of treatment was not prejudicial error because examinations conducted one to two years later confirmed the absence of recurrence and

therefore supported the rating change that had taken place based on residuals, effective the date the 100% cancer rating ended).

As the note itself and the *Federal Register* reflect, the point of the examination prescribed in DC 7343 is to get a clear picture of the veteran's health and ensure that VA assigns cancer and residual ratings and effective dates based on actual medical findings, rather than on a set presumptive period. *See* 65 Fed. Reg. 48,206. Here, VA had plenty of evidence of Mr. Breland's medical history. Thus, VA could retroactively establish the dates of active cancer, the 6-month periods following cessation of treatment, and when residuals began, along with their severity. For example, a November 2006 private medical record noted a diagnosis of tongue cancer. R. at 1833. And another record showed that Mr. Breland was done with chemotherapy and radiation therapy in 2007. *See* R. at 1280; *see also* R. at 1431 (a January 17, 2007, medical record reflected that the veteran was "about 10 days out from radiation therapy"). Then, a January 2008 private medical record showed that he was again diagnosed with tongue cancer. R. at 1284. Next, a July 2008 private medical record revealed no evidence of malignancy. R. at 1209; *see also* R. at 1698 (a May 2010 VA examination showing no recurrence). Thus, the RO assigned 100% ratings until at least 6 months following cessation of treatment for both periods of active cancer. *See* R. at 205-06, 1431. What's more, there was evidence that backed the Board's finding that Mr. Breland suffered from residuals from August 1, 2007, and thus warranted an earlier effective date for those conditions. R. at 10-11; *see also* R. at 609-26 (September 2017 VA examination addressing cancer residuals).

The bottom line is, VA had a clear picture of Mr. Breland's health and could assign ratings and effective dates based on actual medical findings. Thus, we see no merit in his contention that he was entitled to retain the 100% rating until October 2017, the date following the second VA examination. *See Tatum*, 24 Vet. App. at 145 (finding that the information in a medical opinion, and not the date the medical opinion was provided, is the relevant component when assigning an effective date). Mr. Breland got the benefit of the note to DC 7343—a 100% rating from the date of service connection until 6 months following cessation of treatment for both active cancer periods. Although Mr. Breland argues that the 100% rating must continue until VA determined the appropriate residual ratings, we have already held that any error in evaluating residuals of a malignant neoplasm does not render the termination of a 100% rating itself improper and does not warrant reversal and reinstatement of the prior 100% evaluation. *Rossiello*, 3 Vet.App. at 431–33

13

(holding that the effective date for the residual condition was the date that the 100% cancer rating ended).

### E. Summary

In sum, the note to DC 7343 is prospective and thus the prospective procedures—i.e., the examination 6 months after cessation of treatment and contemporaneous notice of any reduction—are not strictly applicable when VA awards service connection and disability ratings retroactively. This is particularly true where the record contains sufficient evidence for VA to ascertain a clear picture of the veteran's health and assign ratings and effective dates based on those actual medical findings. Here, based on such evidence and the note to DC 7343, VA continued the 100% tongue cancer rating from the date of service connection until 6 months following cessation of treatment for both periods and then assigned ratings based on his residuals, effective from August 1, 2007, the date after the first 100% cancer rating ended. Thus, contrary to Mr. Breland's contentions, he may not retain the 100% cancer rating from the date of service connection until October 1, 2017, the month following the second VA examination.[4]

## IV. CONCLUSION

On consideration of the foregoing, the portion of the June 27, 2018, Board decision denying a compensable initial rating for service-connected tongue cancer from August 1, 2007, to January 16, 2008, and from September 1, 2008, to present is AFFIRMED. The remainder of the appeal is DISMISSED.

Greenberg, *Judge*, concurring in part and dissenting in part: Although I agree with the majority's analysis regarding the appellant's argument, I write separately to address a matter not raised by the appellant. In October 2006, a PET scan confirmed the existence of squamous cell cancer at the right base of the tongue. R. at 1835-37. In September 2007, a private physician record states that the appellant's "last x-rays were done in July and look fine." R. at 1895. Although blood

---

[4] We acknowledge our dissenting colleague's concerns; but, because Mr. Breland did not raise this issue in his briefs or at oral argument, we did not address it. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (the Supreme Court stating that our system is designed around the premise that parties represented by competent counsel know what is best for them and are responsible for advancing the facts and argument entitling them to relief, and that courts normally decide only questions presented by the parties).

work was provided during this evaluation, no PET scan was performed. R. at 1895-98. In January 2008, a PET scan revealed tongue cancer. R. at 1280.

The majority notes that "VA explained that the reason behind the examination requirement at 6 months after cessation of treatment was to ensure that the evaluation reflected *actual medical findings*, rather than a regulatory assumption." Majority Opinion at 7, citing 65 Fed. Reg. 48206 (emphasis added). The majority also acknowledges that rating based on residuals does not occur unless there has been "no local recurrence or metastasis." *Id.*, quoting *Rossiello v. Principi*, 3 Vet.App. 430, 433 (1992). The medical evidence does not reflect that the appellant was cancer free for six months after the discontinuance of treatment in January 2007. Rather this finding is based on a mere assumption. The evidence reflects that the first PET scan of record following initial treatment, the test that originally confirmed a malignancy, revealed cancer. The medical evidence of record is insufficient to establish that the appellant was cancer free for 6 months following treatment as required by the regulation. The evidence simply establishes that the appellant had cancer in January 2008, not that the appellant was cancer free 6 months after his January 2007 treatment. Admittedly, VA was not required to provide the appellant an examination in July 2007 (6 months after treatment ended) because he was not service connected at the time for cancer. At the very least, however, the requirement of this medical examination in the rating schedule demonstrates the importance of having actual medical evidence to reduce a 100% rating for cancer.

The Board erred in this matter by not performing the proper analysis in its assignment of a disability rating. This veteran should have been in receipt of a 100% rating for an active malignancy until September 2008, 6 months after his surgery. Contrary to the purpose of the regulation, the appellant's cancer was not rated based on actual medical findings. The facts here demonstrate the importance of affording a Vietnam War veteran the benefit of the doubt, especially as it relates to the unpredictable nature of cancer. *See* 38 U.S.C. § 5107(b). For this reason, while I concur in the majority's analysis regarding the appellant's argument, I ultimately dissent from the affirmance of the June 2018 Board decision on appeal.